THE STATE EX REL. LOHMAN & FARMERS MUTUAL TELEPHONE COMPANY, Appellant, v. THOMAS J. BROWN ET AL., Composing PUBLIC SERVICE COMMISSION.—19 S. W. (2d) 1048.

Division One, September 13. 1929.

*D. W. Peters* for appellant.

*D. D. McDonald* and *H. O. Harrawood* for respondents.

RAGLAND, J.—This is an appeal from the judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission, which required the Lohman & Farmers Mutual Telephone Company (hereinafter called the Company) to file with the Commission "a schedule of rates and charges and its rules and regulations governing its relations with its patrons" and to restore to certain of its subscribers a service which it had theretofore discontinued. The principal question for determination is whether the Company is subject to the jurisdiction of the Public Service Commission, that is, whether it is a public utility.

820

The Company was organized in 1907, but it has never been incorporated; its principal function is to operate a central exchange at Lohman for seventeen rural telephone lines and the several lines of forty or forty-one 'phone owners in the town of Lohman. Each of the rural lines is a party line, serving not to exceed twelve or thirteen 'phones, and is owned, managed and kept in repair by the individual owners of the 'phones so served. The owners of each party line have an organization of their own independent of the Company, and as such select one of their number to represent them in their relations to and transactions with the Company. The party lines extend to the corporate limits of Lohman; the Company constructed and owns the lines which connect them with its switch board. The forty or forty-one 'phones in Lohman are owned by the individual users, but are brought into the exchange by the Company.

The Company owns a dwelling house in Lohman; its exchange is conducted in one room and the remainder of the house is occupied by the operator of the exchange for residential purposes. In connection with the residence the operator is furnished a 'phone. This seems to be the only 'phone owned by the Company in the entire system.

The actual cost of operating and maintaining the exchange is levied against the 'phones served. There are 195 or 196 all together, and the average monthly assessment against each is twenty-five cents. There is no other charge of any kind for the service. The owners of these 'phones constitute the Company, and its property was acquired with a fund made up of membership fees and special assessments paid in by them.

At Centertown there is a mutual telephone exchange of precisely the same type as that operated by the Company at Lohman. The owners of the former and the Company have constructed and jointly own a so-called commercial line between Centertown and Lohman. This line enables the 'phone owners in each system to have exchange service with those of the other, but no charge whatever is made for such service.

The Southwestern Bell Telephone Company runs a long-distance toll line into the switch board of the Centertown Company. Through an arrangement with that company the owners of 'phones on lines running into the Lohman exchange are given long-distance service over the Bell lines through the Centertown exchange. For this service they pay the tolls exacted by the Bell Company from Centertown to the points communicated with on the Bell lines: nothing is charged for the service rendered in connection with these long-distance calls over the line from Lohman to Centertown. The Company, however, collects the tolls for long-distance calls originating

on its lines and pays them monthly to the Centertown Company and is allowed by the latter company for this collection service a commission of ten per cent of the amounts so collected.

The Company and the Capital City Telephone Company own and operate jointly a commercial line between Lohman and Jefferson City. A fee of ten cents is charged for every call over this line, whether from Lohman to Jefferson City or from Jefferson City to Lohman. Upon the payment of such fee 'phone users on the Lohman exchange can talk to Jefferson City: and the public generally are invited, or at least permitted, to use the 'phone in the Company's exchange at Lohman for the purpose of making such calls. By arrangement between them one-half of the tolls accruing from the use of this line goes to the Company and the other half to the Capital City Company.

By special arrangement the station of the Missouri Pacific Railway Company at Lohman is given telephonic connection with the Company's exchange, for which the railway company pays a flat rate of one dollar per month. The Company constructed the line, but it is not clear from the record whether it, or the railway company, owns the 'phone: whether by the one or the other we do not regard as material.

The only revenue that the Company receives in addition to the assessments which it levies on its members is derived from: its share of the tolls accruing from the use of the commercial line between Lohman and Jefferson City; its commissions for collecting long-distance tolls for the Bell Company; and the one dollar per month paid by the railway company.

This proceeding originated through the filing of a complaint with the Public Service Commission by the owners of one of the party lines. Because of an alleged violation by them of a by-law the Company disconnected their line from its switch board and refused them further exchange service. Restoration of this service was embodied in the order of the Commission under review.

The Company was organized as a mutual telephone company: whether it is a public utility is to be determined from what it does. And what it does, with one exception, is to operate a telephone exchange *for itself*. The one exception is: it affords "telephonic communication for hire" over its line from Lohman to Jefferson City. That one line is the only one of its properties that it has invited the public to use: it is the only one dedicated to public use. To the extent of its operation of that line it is a public utility, and no further. [Terminal Taxicab Co. v. Kutz, 241 U. S. 252.]

Respondents say that the Company is either a public utility, or it is not a public utility, meaning thereby that, if it is a public

utility with respect to any of its business, it is a public utility as to all of it. The contention seems to be based on language used in State ex rel. Danciger v. Pub. Serv. Comm., 275 Mo. 483, 495, 205 S. W. 36. That language, when applied to the facts of this case, means: the Company as an owner and operator of the telephone line from Lohman to Jefferson City, and to that extent only, "is a public utility . . . within the whole purview and for all inquisitorial and regulatory purposes of the Public Service Commission Act." And we so hold.

The arrangement with the Missouri Pacific Railway Company must be regarded as merely a private contract entered into by the Company largely for the benefit of its own members: it was not pursuant to any profession of public service on its part expressly, or impliedly, made.

From what has been said it is apparent that the Public Service Commission is without jurisdiction of the Company, in so far as its relations with its members are concerned: its order is too broad in other respects. The judgment appealed from is therefore reversed and the cause remanded to the Circuit Court of Cole County with directions to that court to enter a judgment annulling the order. All concur.