HINDS COUNTY WATER CO. v. SCANLON.

(Division A. March 2, 1931. Suggestion of Error Overruled April 13, 1931.)

[132 So. 567. No. 28906.]

W. E. Morse, of Jackson, for appellant.

760

Green & Green and Cecil F. Travis, all of Jackson; for appellee.

Argued orally by **W. E. Morse,** for appellant and by **Cecil Travis,** for appellee.

**Cook, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of the First district of Hinds county, Mississippi, perpetually enjoining the appellant, Hinds County Water Company, from interfering with or cutting off the water supply of the appellee, W. J. Scanlon, in his residence and premises on the Jackson-Raymond Highway near Jackson, Mississippi.

The bill of complaint filed by the appellee charged, in substance, that he was the owner of a certain tract of land located on the Jackson-Raymond concrete highway, approximately two miles west of the western city limits of

the city of Jackson, Mississippi; that the appellant was a public service corporation, engaged in the business of selling water to all persons desiring it, who owned property or resided on or near the Jackson-Raymond and Jackson-Terry highways, and as such was charged with the duty of furnishing water to all persons desiring it, at a reasonable charge based on the amount of consumption; that on or about June 1, 1928, appellee entered into negotiations with the appellant seeking to be allowed to connect a water pipe onto the six-inch main owned by the appellant and running along the right of way of the Jackson-Raymond highway, and that after much negotiation he was allowed to make such connection after purchasing from said company a water meter at and for the sum of forty-three dollars, and paying a connection charge of ten dollars.

It was further alleged that the appellee was the owner of a valuable residence located on the land above mentioned, approximately one thousand nine hundred feet west of the western terminus of the water mains of the appellant company; that at an expense to himself of about four hundred dollars, he laid a one-inch water pipe from his residence to the six-inch main of the appellant company; that the appellant began serving him with water about the 1st of April, 1929, and continued so to do until a few days prior to the filing of the bill of complaint; that the appellant had an established water rate of double the rate charged to consumers by the waterworks of the city of Jackson; and that he paid the appellant all charges for water that were demanded of him.

It was further charged that after the appellant had served the appellee with water for a number of months, it exacted of him, as a condition of continued service, that he deed to the appellant company the nineteen hundred feet of water pipe that he had laid at his own ex-

pense, and in addition thereto that he pay to it, the sum of five hundred six dollars, being one dollar per front foot of all property owned by him and abutting on the Jackson-Raymond highway; and that upon his refusal to comply with these conditions, the appellant cut off his water supply. The prayer of the bill was for the issuance of a mandatory injunction commanding the appellant to reconnect its water supply to appellee's property, and that on the final hearing the appellant be perpetually enjoined from cutting off such supply of water.

The appellant answered the bill of complaint and denied that it was a public service corporation, but averred that it was a private corporation organized by property owners to develop their property, and set forth its version of the negotiations between the appellant and appellee in reference to the connection with its water main. It averred that the appellee was fully advised as to the conditions and requirements upon which others had been permitted to connect with its mains, and was fully informed of the fact that no contract could be made with nonstockholders except with the approval of the board of directors of the corporation; that purely as an accommodation, the appellee was permitted to connect with the main, but with the definite understanding and agreement that he would pay whatever amount should be later required of him by the board of directors of the corporation; and that upon his failure to do so, his water supply might be cut off.

The answer also denied the making of any agreement with the appellee, denied that the appellee had any authority to connect with its mains without a contract with the company so to do, and denied that its demand for payment of one dollar per front foot for property owned by appellee abutting on this highway was excessive, as all its stockholders were required to pay the same amount. The answer of the appellant company also set forth one of its by-laws, which reads as follows:

"This corporation is hereby expressly declared to be a private corporation and not a public service corporation. Contracts with this corporation other than to stockholders shall be made on behalf of the corporation by private contract and upon such terms as the board of directors, or the officials of the company shall in each case determine upon. No contract with non-owners of stock shall be made which shall in the judgment of the board of directors, or officers, so impair the furnishing of water to stockholders as to in their opinion render nugatory the benefits for which this private corporation is organized, to-wit, the furnishing of water to stockholders of this corporaiton."

The proof shows that the appellant corporation was chartered under the provisions of chapter 100, Code 1930 (sections 4130-4219), and that it was empowered by its charter, "(1) to own, by purchase or otherwise, lease, rent, or in any other manner lawfully acquired, and to sell, rent, lease, or assign to any other person, firm, corporation, county, or municipality, pipe lines and mains, for the transportation, delivery and sale of water; and to construct, build, maintain and operate the same; (2) to buy and sell water from and to individuals, firms, corporations, counties, or municipalities; (3) to own, operate, maintain, and control such meters and other appliances as may be necessary in conducting its business aforesaid; (4) to buy, own, sell, lease or rent all such property, real, personal, or mixed, if any be necessary in the conduct of its business aforesaid, and not contrary to law."

After its organization the appellant company was, by the board of supervisors of Hinds county, granted the privilege and authority to construct, operate, and maintain its water mains within the right of way limits of the Jackson-Raymond and Jackson-Terry highways; the order of the board of supervisors reading, in part, as follows:

"It appearing to the board that, the Hinds County Water Company, a corporation created under the laws of the state of Mississippi with its domicile at Jackson, Mississippi, proposes to lay water mains down those highways known as the Jackson-Terry road and the Jackson-Raymond road for the purpose of supplying water to persons on or near said highways.

"And it appearing further to the board that by resolution the city of Jackson has agreed to extend its water main system to the end of Porter street in said city, and that the said Hinds County Water Company, proposing to build at its own expense a main to connect with the same from said point to the junction of the two highways mentioned above; and it appearing further to the board that the said corporation was organized by property owners on said highways for said purpose and that it would be for the best interest of the county for said company to have the privilege and authority of laying said mains within the right of way of said highways;

"It is, therefore, ordered by the board that the said Hinds County Water Company, a corporation, and its successors and assigns, be and they are hereby granted the privilege and authority to so construct, operate and maintain its water mains as aforesaid within the right of way limits of the two highways, and such other public roads as may connect therewith for the purpose aforesaid, and to this end may construct, operate and maintain such laterals or undercrossings, or tap lines as it may deem expedient or necessary for the purpose of supplying water to property owners or others; however, it is expressly understood by all parties hereto that the said mains, tap lines, or undercrossings shall not interfere with the construction, maintenance or use of said highway right of way as a public road, but that the same shall only be so constructed, operated and maintained by

the said corporation, its successors and assigns, with due regard thereto.''

The proof further shows that the appellant constructed a six-inch main for some distance along the Jackson-Raymond and the Jackson-Terry highways from their intersection near the corporate limits of the city of Jackson and contracted with the city for a limited supply of water for these mains; that at the time this suit was filed, the appellant was supplying water to thirty-one stockholders who owned property abutting on these highways, one of the stockholders being the Alta Woods Subdivision, which owned a large frontage on these highways, and that each of the stockholders was required to pay one dollar per foot for all frontage on the mains, and in addition thereto the required charge for water consumed, which was double the charge of the city of Jackson for water. Within the Alta Woods subdivision, the appellant company was serving sixteen families who were not required to pay the front-foot assessment; this charge or assessment being paid by the subdivision or the owners thereof. Outside of the Alta Woods subdivision, four nonstockholders were being served, and these parties paid the front-foot assessment in addition to the regular charge for water.

It was further shown that a number of people owning lands adjacent to or near these highways were refused connections, and that the city of Jackson had forbidden the extension of the mains so as to increase the consumption of water, and had forbidden the appellant from permitting additional connections without the consent of the said city being first obtained.

As to the negotiations leading up to, and the circumstances incident to, the laying of the one-inch pipe by appellee and thereby connecting his property with appellant's six-inch main, the appellee testified that when he first approached the officers of the appellant company

with reference to securing water for his proposed residence, he was informed that the city of Jackson had forbidden any further connection with the mains, but that they would furnish him water if he would secure a permit from the city; that he secured this permit and then purchased the necessary pipe to connect with appellant's main, and applied to the officers of the appellant company for permission to make the connection; that they informed him that they had no authority to contract with him, and that only the board of directors could do so, and that the board would not meet until sometime thereafter; that H. O. Pate, president of the company, informed him that the board would probably require him to deed to the company the one-inch pipe line and pay one dollar for each front foot of property owned by him abutting on the highway; that he informed Mr. Pate that he considered this exorbitant, but would pay twenty-five cents per front foot and deed to the company the pipe line; but that thereafter, without any agreement having been reached with the officers of the company, and without any agreement on his part to comply with the requirements of the board of directors, he was permitted to make the connection after paying for a meter and the installation of the meter and connection.

He further testified that several months after he made this connection with the main, the appellant company notified him that its board of directors had fixed the terms upon which water would be furnished him, the terms being that he convey to the appellant the one-inch pipe line and pay an assessment of one dollar per front foot of all property owned by him abutting on the highway; that he refused to comply with these terms, and thereupon his water supply was cut off.

The officers of the appellant company testified that they informed the appellant that only the board of directors could contract with him to supply him water, and H.

O. Pate, the president of the company, testified that he informed the appellee that the board would not meet for some time thereafter, and that it was his judgment that the board would require him to convey to the company the pipe line to be laid by him, in order that it could control it, and also would require him to pay one dollar per front foot for all property owned by him abutting on the highway, and purchase stock as required of all stockholders; that the appellee promised to comply with the requirements of the board of directors and agreed that if he did not do so the water might be cut off; and that upon this promise and agreement, purely as an accommodation to the appellee, he permitted the connection to be made.

The first contention of the appellee is that the appellant company is estopped to deny its agreement to supply him with water, and must continue to supply him at the established rate, for the reason that he was induced to buy property and to construct his residence on the representation of appellant's officers that it would serve him with water. The doctrine that a person will be held to a representation made for a position assumed, where otherwise inequitable consequences and damage would result to another, who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon, is well established, but we do not think the evidence in this record shows such acts or conduct on the part of the appellant company as would warrant a holding that it was estopped to refuse to longer supply the appellee with water upon terms more favorable than those required of other abutting owners. While the appellee testified that the officers of the appellant company promised to supply him with water provided he secured a permit in the city of Jackson for this additional connection, the testimony established the fact that there was no sort of agreement as to the terms or conditions

upon which such service would be given, and no promise by the said officers in reference to such terms and conditions upon which the appellee could have, in good faith, relied; but, on the contrary, before the connection was made, the appellee was fully informed of the fact that none of the officers of appellant with whom he was negotiating had any authority to contract with him for service, or to fix the terms and conditions upon which such service would be granted, and that only the board of directors of the corporation was authorized to fix the terms of such service and to contract therefor. And he was further advised as to the probable terms that would be exacted by the board of directors when its next meeting was held some months later. When the board of directors later fixed the terms and conditions upon which continued service of water would be granted to the appellee, he refused to comply therewith; and we do not think that upon these facts the predicate of an estoppel existed.

The next and decisive question presented by this record is whether or not the appellant company is a public or quasi-public service corporation, or a public utility, and, therefore, charged with the duty of serving the public generally without discrimination. The powers granted to the appellant in its charter of incorporation are broad enough to authorize it to engage in the sale and distribution of water, and to acquire, own, and operate distributing systems for that purpose, in such a manner as would render it a public service corporation; but this fact does not necessarily fix its status as being that of a public utility. It is proper to look to the terms of the charter of the corporation as one factor in determining the status of the corporation, and whether it is authorized to engage in such public service, if it so desires; but the mode of operation and the nature and character of the service in which it engages is controlling.

After having been incorporated under a charter granting the power to engage in such public service, such a corporation may or may not do so, and until it engages in such service or holds itself out to serve the public within a certain area for compensation, it will not be held to be a public utility merely because its charter provisions are broad enough to authorize such public service. Allen v. Railroad Commission, 179 Cal. 68, 175 P. 466, 8 A. L. R. 249 and note at page 286.

In many jurisdictions the right granted to water companies to exercise the power of eminent domain is considered as having a material bearing upon the question of whether or not said companies are public utilities, but in this state there is no statute granting to water distributing companies the right to exercise this power, and there is no statute defining a public utility or laying down any fixed rule as a guide to be followed in determining the status of one engaged in the distribution of water, and in each case the question of whether or not such a corporation is a public or quasi-public service corporation must be determined by the application of general principles to the facts presented.

Upon the organization of the corporation here involved, a by-law was adopted declaring it to be a private corporation organized for the primary purpose of furnishing water to its stockholders, and that its surplus water would be furnished to nonstockholders only by private contract and upon such terms as the board of directors or the officers of the company should fix in each case. This declaration, however, is not controlling, but we must look to the mode of operation and the nature and character of the service in which it engaged, as shown by the facts in evidence. The proof in this record shows that this corporation was not organized for the purpose of supplying water to the public generally in the area served by it, but merely to supply its stockholders and

those having fixed contractual relations with it. It is made to appear that the appellant company did not hold itself out to the public to serve anyone within the area of service for a fixed compensation, but it served only its stockholders and a very limited number of nonstockholders of a certain class with whom it had fixed contractual relations. Under these circumstances and upon all the facts shown by the record, as stated herein, we do not think the appellant company comes within the classification of a public utility, and we think it has the right to fix the terms upon which it will supply water to the appellee.

The case of Caston v. Hutson, 139 Miss. 890, 104 So. 698, which is referred to by counsel for the respective parties, is of no material aid in determining the question here presented, for the reason that the facts are entirely different. In that case the proof showed that the waterworks or system had been installed for the purpose of supplying all the inhabitants of a municipality with water, and that the owners of this water system used the streets of the municipality for the purpose of laying and extending its water mains, and for many years it offered to serve and did serve all the inhabitants and industries of the municipality with water at a fixed monthly rate. Under these facts, it was held that this water system had been dedicated to the public service and use to the extent that, within the territory served by it, the public generally, and particularly that portion of it that had been served, and had accepted the service, might demand and require that so long as the service is continued, it should be furnished to the individuals without any sort of discrimination.

It follows from the facts herein expressed that the decree of the court below must be reversed and the bill of complaint dismissed, and it is so ordered.

Reversed, and bill dismissed.