[No. 27568. Department One. July 10, 1939.]

INLAND EMPIRE RURAL ELECTRIFICATION, INC., *Respondent*, v. THE DEPARTMENT OF PUBLIC SERVICE *et al., Appellants.*[1]

[1]Reported in 92 P. (2d) 258.

*The Attorney General* and *Geo. G. Hannan, Assistant,* for appellants.

*Davis, Heil & Davis,* for respondent.

STEINERT, J.—The purpose of this action was to obtain a declaratory judgment establishing plaintiff's legal status and determining whether or not it was subject to the jurisdiction of the department of public service. Defendants' demurrer to the complaint was overruled. Upon refusal by defendants to plead further, the court entered judgment declaring that plaintiff was not a public service corporation or a public utility within the purview of the public service commission law, and that it was not subject to the jurisdiction, supervision, or control of the department. The defendants have appealed.

The complaint, to which we are limited for a knowledge of the facts, presents the case as follows: Respondent, Inland Empire Rural Electrification, Inc., is a corporation, created under chapter 134, Laws of 1907, p. 255 (Rem. Rev. Stat., §§ 3888-3900 [P. C. §§ 4698-4709-1]), which provides for the formation of corporations "for any lawful purpose except the carrying on of a business, trade, avocation or profession for profit." The corporation was organized by a group of farmers in Spokane and Whitman counties in March, 1937, and is one of many rural electrification projects in this and other states of the Union. Its purposes, in general, are to generate, manufacture, purchase, and acquire electrical energy, and to distribute the same over its transmission lines, at cost, to its members only. It is financed by the rural electrification administration, a United States agency which was created under the

Federal rural electrification act (May 20, 1936, 49 Stat. 1363, title 7 U. S. C. A., § 901), and which is authorized to make loans in the several states and territories for rural electrification and the furnishing of electrical energy to persons in rural areas who are not receiving central station service.

According to its charter and by-laws, membership in the corporation is evidenced by certificate. A person, whether an individual, a partnership, or a corporation, may become a member only after acceptance of his, or its, application by the board of trustees, the payment of a membership fee of five dollars, and the execution of an agreement to purchase, monthly, not less than the minimum amount of electrical energy as fixed by the corporation from time to time. Not more than one membership may be held, owned, or controlled by any one person, partnership, corporation, or association, and each member is limited to one vote in the affairs of the company. Any member may be expelled for violation of the by-laws, the articles of incorporation, or the rules and regulations of the corporation, and, upon expulsion, voluntary withdrawal or death of any member, his, or its, membership may be cancelled and the membership fee returned.

According, also, to the charter and by-laws, at the close of each fiscal year, and after provision has been made for the payment of operating expenses, interest and matured obligations, taxes and insurance, the corporation is required to apply the earnings to the following purposes in the priority as listed, (1) for the establishment and maintenance of a reserve fund to be used for the payment of outstanding notes, bonds, and other instruments of indebtedness; (2) for the establishment of a general reserve fund to be used for working capital, taxes, insurance, and depreciation; (3) for the payment, to the members, of refunds in

proportion to the amounts of their purchases of electrical energy and goods from the corporation; and (4) to the extent of the remainder, for corporate purposes.

The respondent corporation has constructed its electric facilities with funds derived from loans advanced by the rural electrification administration to the extent of one million dollars, for which the corporation has given its notes secured by an open mortgage on its properties. It contemplates building, in the near future, additional lines in order to serve other persons in adjoining rural areas who desire to become members and who are not now receiving central station service; for such expansion, it expects to obtain additional loans from the same source and upon notes secured by the same mortgage.

The corporation obtains its electrical energy from Washington Water Power Company at wholesale rates and in turn delivers it over its lines to its members at retail according to fixed rates. It supplies such energy to its members only and does not intend in the future to render service to or for the public.

As alleged in the complaint, the department of public service, appellant herein, is vested by law, chapter 117, Laws of 1911, p. 538, and subsequent amendatory and supplemental acts (Rem. Rev. Stat., §§ 10339 to 10459 [P. C. §§ 5528 to 5637]), with certain regulatory and supervisory powers over public service properties and utilities, including regulation of rates and service. Further, under chapter 151, Laws of 1933, p. 540 (Rem. Rev. Stat. (Sup.), §§ 10439-1 to 10439-15 [P. C. §§ 4709-31 to 4709-45]), the department is vested with supervision over the issuance of stocks, bonds, notes, and other evidences of indebtedness of public service corporations, and unless the issuance of such evidences be permitted by the department, they are void. Also,

under the provisions of chapter 158, Laws of 1937, p. 556 (Rem. Rev. Stat. (Sup.), §§ 10417 to 10417-6 [P. C. §§ 5637-21 to 5637-28]), every corporation subject to regulation by the department, with certain exceptions not relevant here, is required to pay to the department a fee equivalent to a certain percentage of its gross operating revenue.

The department, upon the advice of the attorney general, has heretofore asserted and exercised jurisdiction over respondent as though it were a public service corporation within the meaning of the public service commission law. It has required respondent to submit, for approval, the notes and mortgages which it executed and delivered to the United States, and has demanded that respondent file its rate schedules and submit its membership certificates for approval or disapproval. The department insists that respondent must continue to do these things in the future and also must pay as a fee a certain percentage of its gross operating revenue. Respondent, in the past, has complied with the requirements of the department, but only under protest, expressly reserving its right to contest the asserted jurisdiction.

Upon this set of facts, as alleged in the complaint, respondent sought a declaratory judgment of its rights.

Two questions, both raised by the demurrer, are presented on the appeal. The first relates to the jurisdiction of the court to entertain the proceeding.

Rem. Rev. Stat. (Sup.), § 10428 [P. C. § 5613], Laws of 1937, p. 647, which is an amendment of the public service commission law of 1911, provides:

"Any complainant or any public service company affected by any findings or order of the department, and deeming such findings or order to be contrary to law, may, within thirty days after the service of the findings or order upon him or it, apply to the superior court of Thurston county for a writ of review, for the

purpose of having the reasonableness and lawfulness of such findings or order inquired into and determined."

Appellant contends that, a remedy having been provided by the section just quoted, such remedy is exclusive. We entertain a different view of the matter.

In 1935, the legislature passed the declaratory judgment act, chapter 113, Laws of 1935, p. 305. The law, as amended in 1937 (Laws of 1937, p. 39), now appears as Rem. Rev. Stat. (Sup.), § 784-1 [P. C. § 8108-21], *et seq.* Section 1 of the act (Rem. Rev. Stat. (Sup.), § 784-1), provides that courts of record shall have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed. Section 2 of the act (Rem. Rev. Stat. (Sup.), § 784-2) provides:

"A person interested under a deed, will, written contract or other writings constituting a contract, or *whose rights, status or other legal relations are affected by a statute,* municipal ordinance, contract or franchise, *may have determined any question of construction or validity arising under the* instrument, *statute,* ordinance, contract or franchise *and obtain a declaration of rights, status or other legal relations thereunder.*" (Italics ours.)

We have upheld the constitutionality of that act and have declared that it may be invoked for the purposes designated therein, provided the case presents a justiciable controversy, that is, a cause of action wherein the parties have opposing interests which are direct and substantial, and which involve an actual, as distinguished from a possible or potential, dispute. *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345; *State ex rel. Yakima Amusement Co. v. Yakima County,* 192 Wash. 179, 73 P. (2d) 759; *Washington Beauty College, Inc. v. Huse,* 195 Wash. 160, 80 P. (2d) 403.

The required conditions are fully met in the instant case. This action is not one primarily to test the reasonableness or lawfulness of the findings or order made by the commission, for which the remedy would be by writ of error. On the contrary, it is a prevenient action the object of which is to obtain a declaration of the rights, status, and legal relations of respondent, dependent upon the construction of a statute. The controversy here presents a situation for which the declaratory judgment act was designed to afford relief.

■ The second, and principal, question in the case is whether or not respondent, in the conduct of its business, is subject to regulation and supervision by the department of public service of this state, under and pursuant to the public service commission law; and, more specifically, whether or not respondent, in negotiating its loans and mortgaging and pledging its assets and revenues in furtherance of its business, is subject to the jurisdiction of the department.

Appellants' contention is that the public service commission law, Rem. Rev. Stat., §§ 10339-10459, in scope and by specific definition, comprehends the activities which respondent now conducts and the particular transactions which it immediately contemplates. Respondent contends that it operates strictly within the provisions of Rem. Rev. Stat., §§ 3888-3900, and, by virtue of the method of its operation, is without the scope of the public service commission law. It is therefore necessary that we contrast certain sections of these respective statutes and further consider respondent's method of doing business.

The public service commission law, adopted in 1911, came into existence through an act entitled:

"*An Act relating to public service properties and utilities,* providing for the regulation of the same, fixing penalties for the violation thereof, making an appro-

priation and repealing certain acts." (Italics ours.) Chapter 117, Laws of 1911, p. 538.

Although the act has been amended from time to time, its original purpose has been consistently maintained.

Section 8 of the act, now Rem. Rev. Stat., § 10344, contains definitions of various terms, persons, and utilities referred to in the act. The term "service" is used in its broadest and most inclusive sense. The term "public service company" includes every common carrier, gas company, *electrical* company, water company, telephone company, telegraph company, wharfinger, and warehouseman, as such terms are further defined in the same section. The term "electrical company" includes, among other persons and entities, every corporation (with certain exceptions not material here) operating or managing any electric plant *for hire* within this state. The term "electric plant" includes all real estate, fixtures, and personal property operated, owned, used or to be used, for and in connection with, or to facilitate the generation, transmission, distribution, sale, or furnishing of electricity for light, heat, or power *for hire*. Other sections of the act deal with the filing of schedules of rates, and with charges, unreasonable preferences, unjust discriminations, contracts, and distribution of service facilities. By a supplemental act passed in 1933 (Chapter 151, Laws of 1933, p. 540, and now appearing as Rem. Rev. Stat. (Sup.), §§ 10439-1 to 10439-15 [P. C. §§ 4709-31 to 4709-45]), the department is vested with power to supervise and regulate the issuance of stocks or other evidences of ownership and of notes and other evidences of indebtedness and the creation of property liens by public service companies as defined in the act.

It is apparent that, upon a literal application of the definitions above set forth, respondent would come

within the scope of the regulatory provisions of the 1911 act and the additions thereto found in the 1933 act, both of which acts are parts of the public service commission law; for respondent is an "electrical company" operating an "electric plant" in this state, for hire, in the sense that it exacts from its members compensation for its service, and it has issued certificates of ownership and has likewise issued, and proposes further to issue, its notes secured by a lien on its properties. However, the question submitted for our determination is whether, despite these literal definitions, respondent *is,* in fact and law, *a public service corporation* within the purview of the public service commission law.

Turning, now, to the act of 1907 (Rem. Rev. Stat., §§ 3888-3900) under which respondent claims to be operating, we note its provisions. Corporations may be formed under that act for any lawful purpose "except the carrying on a business, trade, avocation or profession for profit." Rem. Rev. Stat., § 3888 [P. C. § 4698]. Such corporations shall have no capital stock, and the interest, voice, vote or authority of each member shall be equal to that of every other member. Rem. Rev. Stat., § 3889 [P. C. § 4699]. Membership may be terminated by voluntary withdrawal, by expulsion, or by death. Rem. Rev. Stat., § 3891 [P. C. § 4701]. The corporation may, by its by-laws, provide the mode and manner of conducting business; the manner in which membership shall cease; the manner of expulsion of members; the manner of terminating their interest in the corporate property, with or without remuneration therefor; the amount of membership fees and dues; the charges which may be made for services rendered or supplies furnished to the members by the corporation; and the formation of a surplus fund and the manner and proportions of its distribution. Rem.

Rev. Stat., § 3893 [P. C. § 4703]. The corporation may borrow money and issue its notes, bills, or evidences of indebtedness, and may mortgage its property as security. Rem. Rev. Stat., § 3894 [P. C. § 4704]. The corporation is forbidden, by Rem. Rev. Stat., § 3898 [P. C. § 4708], to engage in any business, trade, avocation or profession *for gain,* on penalty of forfeiting its right to exist and having a judgment of dissolution entered against it in an action brought by the state; that section, however, concludes with the following provision:

"Nothing herein contained shall be construed to forbid such a corporation accumulating a surplus fund through membership fees and dues, or from charges made its members for services rendered or supplies furnished them by it, and the distribution of such fund among the members in the manner provided by the by-laws."

From what has been already stated herein, it is apparent that respondent was organized and is pursuing its activities strictly in accordance with the provisions and privileges of the 1907 act. However, the question in this respect is whether respondent, although created and purporting to operate under that act, is, nevertheless, in fact and law, a public service corporation.

Regulation by the department is predicated upon the proposition that the service rendered is public service and, further, if the person sought to be regulated is a corporation, that it be a public service corporation; in other words, the public service commission law relates to public service properties and utilities. This is indicated in the title and throughout the provisions of the act, and all courts to which our attention has been directed, including our own, have proceeded on that theory. *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861, L. R. A. 1915C, 287, Ann. Cas.

1913D 78; *State ex rel. Public Service Commission v. Spokane & Inland Empire R. Co.,* 89 Wash. 599, 154 Pac. 1110, P. U. R. 1916D 469, L. R. A. 1918C 675; *Sunset Shingle Co. v. Northwest Electric & Water Works,* 118 Wash. 416, 203 Pac. 978; *Clark v. Olson,* 177 Wash. 237, 31 P. (2d) 534, 93 A. L. R. 240; *State ex rel. Spokane United Railways v. Department of Public Service,* 191 Wash. 595, 71 P. (2d) 661; 51 C. J. 38, § 79.

Were the law construed to apply to private corporations not serving the public, a serious question would arise as to its constitutionality under the fourteenth amendment of the United States constitution and Art. I, § 3 of the constitution of the state of Washington. *Munn v. Illinois,* 94 U. S. 113, 24 L. Ed. 77; *Michigan Public Utilities Com. v. Duke,* 266 U. S. 570, 69 L. Ed. 445, 45 S. Ct. 191, 36 A. L. R. 1105; *Frost & Frost Trucking Co. v. Railroad Commission,* 271 U. S. 583, 70 L. Ed. 1101, 46 S. Ct. 605, 47 A. L. R. 457; *Smith v. Cahoon,* 283 U. S. 553, 75 L. Ed. 1264, 51 S. Ct. 582.

A corporation becomes a public service corporation, subject to regulation by the department of public service, only when, and to the extent that, its business is dedicated or devoted to a public use. The test to be applied is whether or not the corporation holds itself out, expressly or impliedly, to supply its service or product for use either by the public as a class or by that portion of it that can be served by the utility; or whether, on the contrary, it merely offers to serve only particular individuals of its own selection. *Clark v. Olson,* 177 Wash. 237, 31 P. (2d) 534, 93 A. L. R. 240; *Van Hoosear v. Railroad Commission,* 184 Cal. 553, 194 Pac. 1003; *Mound Water Co. v. Southern California Edison Co.,* 184 Cal. 602, 194 Pac. 1014; *Richardson v. Railroad Commission,* 191 Cal. 716, 218 Pac. 418; *Stoehr v. Natatorium Co.,* 34 Ida. 217, 200 Pac. 132; *Humbird Lumber Co. v. Public Utilities Commission,* 39 Ida. 505,

228 Pac. 271; *State Public Utilities Commission ex rel. Macon County Telephone Co. v. Bethany Mut. Telephone Assn.,* 270 Ill. 183, 110 N. E. 334; *State Public Utilities Commission ex rel. Evansville Telephone Co. v. Okaw Valley Mut. Telephone Assn.,* 282 Ill. 336, 118 N. E. 760; *Hinds County Water Co. v. Scanlon,* 159 Miss. 757, 132 So. 567; *State ex rel. Buffum Telephone Co. v. Public Service Commission,* 272 Mo. 627, 640, 199 S. W. 962, 965, L. R. A. 1918C 820; *State ex rel. Danciger & Co. v. Public Service Commission,* 275 Mo. 483, 205 S. W. 36, 18 A. L. R. 754; *State ex rel. Lohman & Farmers Mut. Telephone Co. v. Brown,* 323 Mo. 818, 19 S. W. (2d) 1048; *State v. Southern Elkhorn Telephone Co.,* 106 Neb. 342, 183 N. W. 562; *Overlook Development Co. v. Public Service Commission,* 306 Pa. 43, 158 Atl. 869; *Dairymen's Co-Op. Sales Assn. v. Public Service Commission,* 318 Pa. 381, 177 Atl. 770, 98 A. L. R. 218; *Schumacher v. Railroad Commission,* 185 Wis. 303, 201 N. W. 241.

The question of the character of a corporation is one of fact to be determined by the evidence disclosed by the record. A corporation which is actually engaged as a public utility cannot escape regulation by the state merely because its charter or its contract characterizes it as a private corporation. On the other hand, a private corporation cannot be converted into a public service corporation by mere legislative fiat. What it does is the important thing, not what it, or the state, says that it is. *Cushing v. White,* 101 Wash. 172, 172 Pac. 229, L. R. A. 1918F 463; *State ex rel. Silver Lake R. & L. Co. v. Public Service Commission,* 117 Wash. 453, 201 Pac. 765, 203 Pac. 3; *State ex rel. Addy v. Department of Public Works,* 158 Wash. 462, 291 Pac. 346; *Terminal Taxicab Co. v. Kutz,* 241 U. S. 252, 60 L. Ed. 984, 36 S. Ct. 583, Ann. Cas. 1916D 765; *People ex rel. Knowlton v. Orange County Farmers' & Merchants'*

*Ass'n,* 56 Cal. App. 205, 204 Pac. 873; *State Public Utilities Commission ex rel. Macon County Telephone Co. v. Bethany Mut. Telephone Assn.,* 270 Ill. 183, 110 N. E. 334, Ann. Cas. 1917B 495; *Hinds County Water Co. v. Scanlon,* 159 Miss. 757, 132 So. 567; *State ex rel. Danciger & Co. v. Public Service Commission,* 275 Mo. 483, 205 S. W. 36, 18 A. L. R. 754; *Borough of Ambridge v. Public Service Commission,* 108 Pa. Super. 298, 165 Atl. 47; *Limestone Rural Telephone Co. v. Best,* 56 Okla. 85, 155 Pac. 901.

Applying these rules and principles, we are of the opinion that respondent is not a public service corporation and is, therefore, not subject to regulation by the public service commission. Respondent was organized under the 1907 act and, so far as the complaint shows, it conducts its business strictly in accordance with the privileges conferred and the limitations prescribed by that act. But more important than that is the controlling factor that it has not dedicated or devoted its facilities to public use, nor has it held itself out as serving, or ready to serve, the general public or any part of it. It does not conduct its operations for gain to itself, or for the profit of investing stockholders, in the sense in which those terms are commonly understood. It does not have the character of an independent corporation engaged in business for profit to itself at the expense of a consuming public which has no voice in the management of its affairs and no interest in the financial returns. Its members do not stand in the relation of members of the public needing the protection of the public service commission in the matter of rates and service supplied by an independent corporation.

On the contrary, it functions entirely on a cooperative basis, typifying an arrangement under and through which the users of a particular service and the con-

sumers of a particular product operate the facilities which they themselves own. The service, which is supplied only to members, is at cost, since surplus receipts are returned ratably according to the amount of each member's consumption. There is complete identity of interest between the corporate agency supplying the service and the persons who are being served. It is a league of individuals associated together in corporate form for the sole purpose of producing and procuring for themselves a needed service at cost. In short, so far as the record before us indicates, it is not a public service corporation.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and JEFFERS, JJ., concur.

