[No. 46546-5-I. Division One. June 4, 2001.]

UNITED AND INFORMED CITIZEN ADVOCATES NETWORK, *Appellant*, v. THE WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, *Respondent*.

*Michael L. Johnson*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Shannon E. Smith, Assistant*, for respondent.

GROSSE, J. — An entity organized primarily for the purpose of allowing its members to avoid long distance toll charges by means of computers it owns, placed strategically in overlapping local calling areas to accept and forward calls by its members' that would otherwise cross the bound-

aries of the members' local calling area, is subject to regulation by the Washington Utilities and Transportation Commission as a telecommunications company.

## FACTS

United and Informed Citizens Advocates Network (U&ICAN) was ostensibly created as a Washington non-profit, corporation with the stated purpose of providing a method of communication for members to educate, share information and collective power, and to guide and use the collective power to influence agreed upon conditions. U&ICAN operates a telecommunications system allowing individuals to make long distance telephone calls without paying toll charges. It uses overlapping local calling areas, known as extended area service boundaries, and its system is comprised of phone lines and specific computer facilities allowing its members to bridge the extended area service boundaries. U&ICAN purchases a service from a local telephone company that allows a telephone call to be transferred or forwarded to another party. U&ICAN places computers equipped with voice cards in what it calls "strategic locations" and when a member calls a number assigned to a computer over local lines, the computer routes or "hook flashes" the call and dials the phone number of a person being called by the person placing the call to the U&ICAN computer. The calling party is then connected to the called party without incurring any toll.

US West Communications, Inc. (US West), discovered that U&ICAN was doing this and disabled telephone functions and features assigned to three U&ICAN phone numbers. U&ICAN filed a complaint with the Washington Utilities and Transportation Commission (the Commission) against US West.[1] As the result of that complaint, the

[1] In that case, U&ICAN filed a complaint with the Commission against US West seeking declaratory relief and damages for a breach of contract. US West answered that it had not wrongfully disabled the features and alleged that U&ICAN used the features and functions in a manner that violated state law. The parties filed cross motions for a summary determination. U&ICAN's motion was

Commission determined the record in that case was insufficient to determine whether U&ICAN should be classified as a telecommunications company. The Commission initiated a separate classification proceeding pursuant to RCW 80.04.015.[2]

The case proceeded to hearing and all parties except

dismissed and US West's motion was granted in part. The administrative law judge indicated that the record was insufficient for the Commission to determine whether U&ICAN would properly be classified as a telecommunications company. US West's counterclaim for access charges remains to be litigated and that case has not been finalized. U&ICAN filed a petition for review of the Commission's interlocutory decision with the King County Superior Court. The court dismissed the petition, which was affirmed by this court by unpublished opinion filed September 13, 1999 in *United & Informed Citizen Advocates Network v. Washington Utilities & Transportation Commission*, No. 42689-3-I (Wash. Ct. App. Sept. 13, 1999).

[2] RCW 80.04.015 states in pertinent part:

Whether or not any person or corporation is conducting business subject to regulation under this title, or has performed or is performing any act requiring registration or approval of the commission without securing such registration or approval, shall be a question of fact to be determined by the commission. Whenever the commission believes that any person or corporation is engaged in any activity without first complying with the requirements of this title, it may institute a special proceeding requiring such person or corporation to appear before the commission at a location convenient for witnesses and the production of evidence and produce information, books, records, accounts, and other memoranda, and give testimony under oath as to the activities being conducted. The commission may consider any and all facts that may indicate the true nature and extent of the operations or acts and may subpoena such witnesses and documents as it deems necessary.

After investigation, the commission is authorized and directed to issue the necessary order or orders declaring the activities to be subject to, or not subject to, the provisions of this title. In the event the activities are found to be subject to the provisions of this title, the commission shall issue such orders as may be necessary to require all parties involved in the activities to comply with this title, and with respect to services found to be reasonably available from alternative sources, to issue orders to cease and desist from providing jurisdictional services pending full compliance.

In proceedings under this section, no person or corporation may be excused from testifying or from producing any information, book, document, paper, or account before the commission when ordered to do so, on the ground that the testimony or evidence, information, book, document, or account required may tend to incriminate him or her or subject him or her to penalty or forfeiture specified in this title; but no person or corporation may be prosecuted, punished, or subjected to any penalty or forfeiture specified for in this title or on account of any account, transaction, matter, or thing concerning which he or she shall under oath have testified or produced documentary evidence in proceedings under this section: PROVIDED, That no person so testifying may be exempt from prosecution or punishment for any perjury committed by him or her in such testimony: PROVIDED FURTHER, That the exemption from prosecution in this section extends only to violations of this title.

U&ICAN prefiled direct written testimony. A hearing on the merits was held on May 19, 1998 for the purpose of cross-examination and redirect examination of witnesses. U&ICAN appeared, but refused to present evidence or participate in any cross-examination.

On February 9, 1999, the Commission issued a final order determining that U&ICAN was a telecommunications company providing telecommunications for sale to the general public, and ordered it to cease and desist operations until it registered with the Commission.

U&ICAN appealed to the superior court. The court found that the Commission was authorized to determine whether U&ICAN was conducting business subject to regulation under Title 80 RCW, and that the conclusion reached by the Commission was correct, thereby affirming the final order.[3] U&ICAN appeals to this court.[4]

---

[3] The court also specifically held that US West and GTE Northwest, Inc., likely failed to adequately define boundaries of their customized call management services packages, which the Commission should consider in the yet pending proceeding.

[4] Judicial review of the Commission's actions are reviewed under the standards enumerated in the Administrative Procedure Act, chapter 34.05 RCW. *US W. Communications, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 85, 949 P.2d 1337 (1997). Review of the Commission's decision is governed by RCW 34.05.570. *US West*, 134 Wn.2d at 85 (citing *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 869 P.2d 1034 (1994)).

U&ICAN has the burden of demonstrating the invalidity of the Commission's action. RCW 34.05.570(1)(a). RCW 34.05.570(3) provides that the court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:

(a) The order . . . is in violation of constitutional provisions on its face or as applied;

(b) The order is outside the statutory authority or jurisdiction of the agency . . .;

(c) The agency has engaged in unlawful procedure or decision-making process . . .;

(d) The agency has erroneously interpreted or applied the law;

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court . . .;

(f) The agency has not decided all issues requiring resolution by the agency;

. . . .

(h) . . . or

## DISCUSSION

█ U&ICAN claims the Commission does not have jurisdiction to determine whether it is a telecommunications company subject to regulation by the Commission under RCW 80.04.015. U&ICAN's argument can be summarized into an assertion that the Commission cannot regulate its activities because it has a "fundamental liberty interest" to engage in those activities. U&ICAN asserts that the Commission's final order is unconstitutional because there is no governing statute, regulation, tariff, and no legal duty owed by U&ICAN. This argument is specious and disregards the clear authority of the Commission to determine whether any person or corporation is subject to regulation under RCW 80.04.015. The statute unequivocally grants the Commission the jurisdiction to consider the question whether U&ICAN is subject to its regulation.

█ Further, U&ICAN argues that its corporate status exempts it in some way from the Commission's oversight. Its corporate status is irrelevant to the determination of whether it is operating as a telecommunications company. The classification statute, RCW 80.04.015, clearly focuses on whether a person *or a corporation* conducts business subject to regulation under Title 80 RCW. It is the conduct that makes the corporation subject to regulation.

█ The Commission exercised its authority under RCW 80.04.015 to consider whether U&ICAN was a "telecommunications company" as defined in RCW 80.04.010.[5] Whether U&ICAN conducts business as a telecommunications com-

(i) The order is arbitrary or capricious.

The Commission decides questions of fact and this court reviews the Commission's findings and does not conduct a review of the superior court's decision. *Waste Mgmt.*, 123 Wn.2d at 633. The Commission's findings of fact are reviewed under a substantial evidence standard. *US West*, 134 Wn.2d at 86 (citing *In re Electric Lightwave, Inc.*, 123 Wn.2d 530, 542, 869 P.2d 1045 (1994)).

[5] " 'Telecommunications company' includes every corporation, company, association, joint stock association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, and every city or town owning, operating or managing any facilities used to provide telecommunications for hire, sale, or resale to the general public within this state." RCW 80.04.010.

pany is a question of fact for the Commission. The Commission's decision is reviewed under the substantial evidence standard.[6]

█ U&ICAN claims to be a nonprofit corporation, company, or person within the meaning of RCW 80.04.010. Its own certificate of incorporation and bylaws demonstrate its corporate status. It owns computers equipped with voice cards that use transfer features of US West and GTE Northwest, Inc. These personal computers and voice cards are "facilities" as defined in RCW 80.04.010.[7] Additionally, U&ICAN manages the use of its network features, especially including call forwarding and transfer features which it purchased from the local exchange companies. These services provided by U&ICAN are "telecommunications" as defined in RCW 80.04.010.[8] U&ICAN requires its members to pay both an initiation fee and a flat monthly fee. This fee grants a maximum number of monthly calls allowed for the fee charged, and additional fees are charged if more than this maximum is exceeded. Contrary to U&ICAN's argument, nearly all of the benefits of membership relate to use of the telecommunications system.

U&ICAN claims that the service is offered only to its members and that they are not offered to the general public. However, the record shows that the members are actually from the general public and do not necessarily share the commonality of location required under the definitions of private shared telecommunications services under RCW 80.04.010.[9] Nor does U&ICAN operate a private telecom-

---

[6] *US West*, 134 Wn.2d at 86.

[7] "Facilities" are defined by RCW 80.04.010 as "lines, conduits, ducts, poles, wires, cables, cross-arms, receivers, transmitters, instruments, machines, appliances, instrumentalities and all devices, real estate, easements, apparatus, property and routes used, operated, owned or controlled by any telecommunications company to facilitate the provision of telecommunications service."

[8] "Telecommunications" is defined as "the transmission of information by wire, radio, optical cable, electromagnetic, or other similar means. As used in this definition, 'information' means knowledge or intelligence represented by any form of writing, signs, signals, pictures, sounds, or any other symbols." RCW 80.04.010.

[9] " 'Private shared telecommunications services' includes the provision of

munications system[10] used exclusively by it, but instead offers a service to the members for their own private enjoyment.

Although U&ICAN claims there are significant limitations on or requirements for membership, in fact it is offering services essentially identical to the operations of regulated toll providers in the state. U&ICAN holds itself out to the public as a service provider that interconnects access lines provided by a local exchange company and then provides interexchange services which normally require a toll. The structure of the organization is a thinly veiled attempt to maintain an appearance of something other than what it is. The services provided by U&ICAN are easily distinguished from the type of services provided by a nonprofit water cooperative in *West Valley Land Co. v. Nob Hill Water Ass'n*.[11] The water cooperative owned the facilities used to provide the service to its members and did not use any facilities belonging to another company. Further, the cooperative's customers were located in a discrete service area. Here, U&ICAN uses facilities owned by it and facilities leased from local telecommunications companies to enable its user to avoid lawful long distance charges.

Substantial evidence supports the determination of the Commission that U&ICAN is a telecommunications company. The Commission's decision is not arbitrary or capricious.

Finally, U&ICAN claims that by classifying it as a

telecommunications and information management services and equipment within a user group located in discrete private premises in building complexes, campuses, or high-rise buildings, by a commercial shared services provider or by a user association, through privately owned customer premises equipment and associated data processing and information management services and includes the provision of connections to the facilities of a local exchange and to interexchange telecommunications companies." RCW 80.04.010.

[10] " 'Private telecommunications system' means a telecommunications system controlled by a person or entity for the sole and exclusive use of such person, entity, or affiliate thereof, including the provision of private shared telecommunications services by such person or entity. 'Private telecommunications system' does not include a system offered for hire, sale, or resale to the general public." RCW 80.04.010.

[11] *W. Valley Land Co. v. Nob Hill Water Ass'n*, 107 Wn.2d 359, 729 P.2d 42 (1986).

telecommunications company the Commission violated its constitutional rights,[12] including a right of due process. U&ICAN makes three assertions: (1) that it has a constitutional right to provide telecommunications services outside of any regulatory scheme; (2) that the Commission relied on previous decisions contrary to law in deciding what is subject to regulation; and (3) that the Commission failed to provide a fair hearing before entering the final order. These claims are without merit and we reject them.

■■ The state constitution expressly provides that "all corporations doing business in this state may, as to such business, be regulated, limited or restrained by law."[13] The Legislature also has provided for the regulation of telecommunications companies.[14]

U&ICAN claims there are further constitutional dimensions to this case in that it possesses a fundamental liberty interest to engage in all corporate activities that are not prohibited by law, and that the State has no interest authorized by statute. While these claims are vague at best, and of little merit, they appear to be based on the claim that the case of *Inland Empire Rural Electrification, Inc. v. Department of Public Service*[15] devises some sort of "constitutional" test for determining whether corporations are subject to regulation.

---

[12] At page 26 of its opening brief, U&ICAN makes a sweeping reference to its First Amendment rights. However, U&ICAN cites no authority and offers no argument on this claimed violation and thus we will not review it. RAP 10.3(a)(5); *State v. Groom*, 133 Wn.2d 679, 691, 947 P.2d 240 (1997).

[13] WASH. CONST. art. XII, § 1.

[14] RCW 80.01.040 provides in part:

The utilities and transportation commission shall:

. . . .

(3) Regulate in the public interest, as provided by the public service laws, the rates, services, facilities, and practices of all persons engaging within this state in the business of supplying any utility service or commodity to the public for compensation, and related activities; including but not limited to, electrical companies, gas companies, irrigation companies, telecommunications companies, and water companies.

[15] *Inland Empire Rural Electrification, Inc. v. Dep't of Pub. Serv.*, 199 Wash. 527, 92 P.2d 258 (1939).

Contrary to this assertion, there is no doubt that the Commission is vested with supervisory powers over telecommunications companies if the entity in question is determined to be one. The Commission and U&ICAN disagree on whether or not U&ICAN conducts its business in such a way to render it subject to regulation. U&ICAN argues it conducts its business strictly within the province of a private telecommunications company and, by virtue of this, is not subject to regulation. The evidence belies this view. U&ICAN's operations do not fit within the definition of a "private shared telecommunications service" or a "private telecommunications system," but do fit within the definition of a "telecommunications company" as defined in RCW 80.04.010. The underlying issue in this case is that very determination, whether U&ICAN is a telecommunications company. There is nothing in the record, other than a reference to the interlocutory order in the previously docketed case before the Commission, to support an argument that the Commission's final order is based on any facts other than those presented at the classification hearing. The final order does not rely on any findings or conclusions from the prior and separately docketed case.

As stated in the *Inland Empire Rural Electrification* case:

> The test to be applied is whether or not the corporation holds itself out, expressly or impliedly, to supply its service or product for use either by the public as a class or by that portion of it that can be served by the utility [U&ICAN]; or whether, on the contrary, it merely offers to serve only particular individuals of its own selection.[16]

Thus, the question of the character of the corporation is one to be determined by the evidence disclosed in the record. That is what happened here. Contrary to its "constitutional claim," U&ICAN is not being deprived of its ability to conduct business. It is just unable to circumvent the fact that by implication and through the way it operates, it is a telecommunications company.

---

[16] *Inland Empire*, 199 Wash. at 537.

Additionally, U&ICAN claims it was denied a fair hearing. Part of U&ICAN's argument is based on the fact that the same administrative law judge who made a determination in a previous case refused to disqualify herself. However, on appeal no error was assigned to the administrative law judge's ruling to deny her participation in the case. U&ICAN has waived the issue on appeal.[17]

■ Further, fatal to U&ICAN's claim of a denial of a fair hearing, once the administrative law judge failed to disqualify herself, U&ICAN refused to participate in the hearing. U&ICAN failed to file testimony in response to the testimony filed by Commission staff, US West, or GTE. U&ICAN specifically notified the Commission that it would not participate in the hearing, relying instead on its motions regarding jurisdiction and other matters. U&ICAN appeared at the hearing and objected to the Commission's jurisdiction, but did not cross-examine witnesses or participate further. It cannot be said that the Commission violated U&ICAN's due process rights considering U&ICAN's refusal to participate.

The decision of the Commission is affirmed.

COLEMAN and APPELWICK, JJ., concur.