[No. 22400. Department One. September 17, 1930.]

THE STATE OF WASHINGTON, *on the Relation of George Addy et al., Appellants,* v. THE DEPARTMENT OF PUBLIC WORKS *et al., Respondents.*[1]

*Wright & Catlett,* for appellants.

*James R. Gates* and *A. J. Laughon,* for respondents.

*The Attorney General* and *John C. Hurspool, Assistant,* for respondent Department of Public Works.

MITCHELL, C. J.—This is an appeal from a judgment of the superior court of Thurston county affirming an order of the department of public works denying the petition of the appellants that the department of public works withdraw all jurisdiction over The Fruitdale-on-the-Sound Water Company as a public utility. The appellants say in their brief, "The question before this court on this appeal is one of jurisdiction of the department only," the contention being that the water

[1] Reported in 291 Pac. 346.

company is in mutual ownership and does not constitute a public utility.

In the year 1909, E. D. Lindsay and M. Lenhart were interested in, and later completed their ownership of, lot 3, sec. 13, twp. 27 N., R. 3 E. W. M., containing about forty-six acres, situated in Snohomish county. About that time they platted nearly all of the lot into tracts, calling the plat ''Fruitdale-on-the-Sound'' (although it seems the plat was never recorded), which property they proposed to improve and sell. For that purpose they acquired a supply of water, and established water works and system by which water was delivered to the owners of the several tracts as needed for agricultural and domestic purposes. The water system continued thus in mutual ownership until 1919, at which time the owners organized a corporation known as The Fruitdale-on-the-Sound Water Company. The corporation acquired the title to the water system from the owners of property in lot 3, issuing part of its capital stock therefor, and has, at all times since, operated, improved and extended the water works and service. Some of its capital stock was sold to persons other than land owners within lot 3.

Defining the objects for which the corporation was formed, its articles provide:

''To furnish water to the people living at Fruitdale-on-the-Sound and in the vicinity, located on Lot Three (3), in Section Thirteen (13) Township Twenty-seven (27) North of Range Three (3) East of the Willamette Meridian, Snohomish county, Washington.''

The description thus given of the territory to be served is at first somewhat confusing, but altogether not misleading, in saying ''Fruitdale-on-the-Sound and in the vicinity, located on Lot Three (3), etc.''

It is obvious that the term ''vicinity'' refers to lands outside of lot 3, rather than within it, because the plat

of Fruitdale-on-the-Sound takes in all of that lot except a very small part, which was reserved for road purposes. This understanding of the meaning of the word "vicinity," as used in the articles of incorporation, is still further suggested and induced by section 3 of the by-laws, which, in speaking of the objects of the company, says:

"To perfect and maintain a water system to furnish water for domestic and irrigation purposes—first to the inhabitants of 'Fruitdale-on-the-Sound' and then to the people in the vicinity thereof."

Still further, the record in this case shows that, shortly after the organization of the corporation, it commenced, as early as 1920, and thereafter continued, to supply water for hire to people in that vicinity outside of lot 3, the number of such patrons increasing from year to year until, finally, at the time of the hearing of this case by the department of public works, there were three or four times as many patrons outside of lot 3 as there were within it.

The evidence shows that, shortly after the corporation was formed and continuing thereafter, it received from time to time and complied with an increasing number of applications from parties outside of lot 3 to be supplied with water. Such outside parties built their homes so that they could use this water, and, by the expenditure of nearly $2,000, they have connected their several premises with the water system of the corporation. The parties outside of lot 3 have at all times paid for the water they received, two different prices to two different classes as determined by the corporation. Indeed, all the costs of the improvements, maintenance and operation of the water works have been met by charges collected from the outside consumers, while the consumers inside have gotten and continued to receive water free; and it appears that the stock-

holders declared and received a dividend on their stock out of funds derived from water charges against outside patrons.

Appellants say, as we understand, that, because the water company has charged different rates to those who pay and, at the same time, furnished its stockholders whose property is located within lot 3 with free water, and those on the outside who pay have agreed to do so by private contracts, therefore it is not a public service corporation and that it has never intended to hold itself out as a public utility. But those things are not the test by which its status is to be determined. In *State ex rel. Department of Public Works v. Higgins,* 155 Wash. 227, 283 Pac. 1074, the parties against whom the department of public works proceeded contended that they were not engaged in a public service, but private business only, and hence did not come under the public service act. But this court held otherwise, and, in its opinion, upon referring to and quoting from the case of *Cushing v. White,* 101 Wash. 172, 172 Pac. 229, L. R. A. 1918F 463, said that such cases—

". . . must be determined by the character of the business actually carried on by the carrier and not by any secret intention or mental reservation it may entertain or assert when charged with the duties and obligations which the law imposes."

The case of *Terminal Taxicab Co. v. Kutz,* 241 U. S. 252, 60 L. Ed. 984, is to the same general effect. In that case, the taxicab company sued to restrain the public utilities commission from assuming jurisdiction over the business of the taxicab company. The court, upon stating that the articles of incorporation of the taxicab company, with copious verbiage, authorized the corporation to build, buy, sell, let and operate automobiles, taxicabs and other vehicles, and to carry pas-

sengers and goods by such vehicles, but not to exercise any of the powers of a public service corporation, said:

"It does business in the district, and the important thing is what it does, not what its charter says."

It must be held to be pretty well settled in this state that no corporation or other person actually engaged as a public utility can, by the simple device of entering into contracts with its customers and patrons, prevent the commencement of the exercise of the state's control or withdraw itself from that control while so engaged.

It is equally well settled that, by statute, public service companies are subject to regulation and to the jurisdiction of the department of public works. By statutes of this state, the term "public service company" is defined as including, among other things, every water company as defined in the acts. Section 8, ch. 117, Laws of 1911, p. 538; Rem. Comp. Stat., § 10344; Laws of 1929, p. 611, ch. 223, § 1. The same sections of the same acts each provide:

"The term 'water company,' when used in this act, includes every corporation, company, association, joint stock association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, and every city or town owning, controlling, operating, or managing any water system for hire within this state."

The evidence in this case clearly and abundantly brings The Fruitdale-on-the-Sound Water Company within the terms of the law. The judgment of the superior court holding that the department has jurisdiction is affirmed.

TOLMAN, BEALS, MAIN, and MILLARD, JJ., concur.