[No. 28549.   Department Two.   February 6, 1942.]

CHARLES MILES, *Respondent,* v. ENUMCLAW CO-OPERATIVE CREAMERY CORPORATION, *Appellant.*[1]

[1]Reported in 121 P. (2d) 945.

378

*John T. McCutcheon,* for appellant.

*Samuel L. Crippen,* for respondent.

BLAKE, J.—The defendant operates a creamery at McKenna, some thirty miles south of Tacoma. About the year 1930, defendant entered into a contract with plaintiff to haul cream from the McKenna plant to Tacoma for twenty cents per hundred pounds, with a guarantee of an average of forty cans a day. Plaintiff continued to operate under this contract until May 15, 1940, when the defendant made other arrangements for sending its cream to Tacoma.

In the meantime (December 14, 1933), plaintiff was granted, under the provisions of chapter 166, Laws of 1933, p. 613, a "For Hire Carrier" permit by the department of public works (now public service). In 1935, he made application for reclassification as a "Common Carrier," and a permit, as such, was granted to him September 30th of that year. He filed a tariff which conformed to the rate provided for in his contract with defendant.

May 10, 1938, pursuant to the provisions of § 11-a, chapter 184, p. 883, Laws of 1935, as amended by chapter 166, p. 623, Laws of 1937, Rem. Rev. Stat. (Sup.), § 6382-1 [P. C. § 234-13½a], the department of public service promulgated Order M. V. No. 28132, effective July 15th, by which it established a rate for common carriers of forty cents per hundred weight for hauling cream from McKenna to Tacoma. This rate was double that which plaintiff was charging defendant. In all respects but charging the rate fixed by the departmental order, plaintiff complied with the law and regulations relating to common carriers. He continued, however, to haul cream for defendant at the rate agreed upon until defendant canceled the contract May 15, 1940. Shortly after that, he commenced this action to

recover the difference between the amount he received between August 1, 1938, and May 15, 1940, from defendant at the contract rate and the amount chargeable at the rate fixed by Order M. V. No. 28132 for common carriers. From a judgment in his favor for $6,333.40, defendant appeals.

The basic question for determination is whether respondent was a common carrier. If he was such, he was bound to charge and collect the rate fixed by the order of the department of public service, M. V. No. 28132. *Northern Pac. R. Co. v. Longmire,* 104 Wash. 121, 176 Pac. 150; *Union Pac. R. Co. v. Eyres Transfer & Whse. Co., ante* p. 282, 121 P. (2d) 340; *State v. Washington Tug & Barge Co.,* 140 Wash. 613, 250 Pac. 49; *New York Central R. Co. v. Frank H. Buck Co.,* 2 Cal. (2d) 384, 41 P. (2d) 547. The respondent seems to contend that he became a common carrier *ipso facto* when he was granted a permit as such and complied with the law and the regulations pertaining to common carriers. With this contention, we cannot agree.

The state, under its regulatory powers, cannot, by legislative fiat or through its administrative officers, convert a private or contract carrier into a common carrier. 13 C. J. S. 49, § 19 (2); 9 Am. Jur. 437, § 15; *State ex rel. Stimson Lumber Co. v. Kuykendall,* 275 U. S. 207, 72 L. Ed. 241, 48 S. Ct. 41; *Big Bend Auto Freight v. Ogers,* 148 Wash. 521, 269 Pac. 802. While what constitutes a common carrier is a question of law, the status of a carrier, as such, must be determined from his method of operation. *Dairymen's Co-op. Sales Ass'n v. Public Service Comm.,* 318 Pa. 381, 177 Atl. 770, 98 A. L. R. 218; *State v. Washington Tug & Barge Co., supra; State ex rel. Stimson Lumber Co. v. Kuykendall, supra.*

Redfield, in his work on Carriers and other

Bailees (p. 15, § 19), draws the following distinction between private and common carriers:

"It is generally considered that where the carrier undertakes to carry only for the particular occasion, *pro hac vice,* as it is called, he cannot be held responsible as a common carrier. So, also, if the carrier be employed in carrying for one or a definite number of persons, by way of special undertaking, he is only a private carrier. To constitute one a common carrier he must make that a regular and constant business, *or at all events, he must, for the time, hold himself ready to carry for all persons, indifferently, who choose to employ him."* (Italics ours.)

This court has recognized and acted on such distinction. *Big Bend Auto Freight Co. v. Ogers, supra.* In that case, it was held that one engaged by contract to haul the goods of one shipper was not a common carrier even though occasionally he carried goods for others. It was there said, p. 524:

"If, as a matter of fact, the hauling of articles on the return trip from Spokane to others than the Big Bend Milling Company was purely casual, covering only emergency matters, this would not, we think, make respondent a common carrier. The lower court indicated that the hauling of return freight from Spokane had been so slight as to be almost negligible, . . ."

In the instant case, the trial court found:

"The Court considers and finds that the hauling done by the plaintiff other than that done for the defendant, was only casual hauling, the records showing that between one and two percent of the hauling done by the plaintiff was for others than the defendant, and then only spasmodically."

In the light of the principles laid down in the authorities we have cited, it seems to us that the foregoing finding of fact compels the conclusion of law that respondent was not a common carrier. Indeed, under

the evidence, respondent was at all times, after getting his permit to operate as a common carrier, subject to reclassification under Rem. Rev. Stat., Vol. 7A, § 6382-15 [P. C. § 234-13½p], which provides:

"Whether or not any motor vehicle is being operated upon the highways of this state within its proper classification, as defined by section 2 of this act, shall be a question of fact to be determined by the department. Whenever the department believes that any person, firm or corporation operating motor vehicles on the highways of this state is not operating within the proper classification, but is in fact a carrier of a different classification, it may institute a special proceeding, upon ten days' notice, requiring such person, firm or corporation to appear before the department at a location convenient for witnesses and the production of evidence, and bring with him books, records, accounts, and other memoranda, and give testimony under oath as to his operations, and the burden shall rest upon such person of proving that his operations are properly classified under the provisions of this section."

We can find no evidence in the record that respondent ever held himself out to the public as a common carrier. On the contrary, there is evidence that he ceased and refused to haul ice cream from Tacoma to the operators of a restaurant and confectionery at Yelm unless he could do all of their hauling. He did not inform appellant of his acquisition of a common carrier permit until after the cancellation of the contract. When that happened, he ceased hauling altogether; and his permit was canceled. These facts, we think, fully support the court's finding that such hauling as he did for others than appellant was "casual"— so slight and negligible as to preclude his classification as a common carrier.

Upon the facts, we conclude, as a matter of law, that respondent was not a common carrier, and that he is not, in face of his contract with appellant, entitled to

maintain an action predicated on the common carrier rates established by Order M. V. No. 28132.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.

[1]Reported in 121 P. (2d) 968.