[No. 29186. Department Two. December 8, 1943.]

HANS L. LARSON, as *Administrator, Respondent,* v. AETNA LIFE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 143 P. (2d) 850.

*J. Speed Smith* and *Henry Elliott*, for appellant.

*George E. Clarke* and *Arthur A. Giblin,* for respondent.

BLAKE, J.—Through its agent at Seattle, William C. Bellows, defendant issued to George H. Larson what is designated an "Accident Ticket Policy." The policy covered a period of forty-eight hours from 11:15 a. m., February 11, 1941, and insured "against loss resulting . . . from bodily injuries . . . effected solely through external, violent and accidental means, subject to the provisions, conditions and limitations herein contained." The policy contained the following condition, or limitation:

"If such injuries shall result, directly and independently of all other causes, within ninety days from the date of accident, in any of the losses enumerated in this Part, *the Company will pay the sum set opposite such loss in Column A if the injuries are sustained by the Insured while riding as a passenger in or upon a public conveyance provided by a common carrier for passenger service and propelled by mechanical power on land or water,* or will pay the sum set opposite such loss in Column B if such injuries are sustained elsewhere.

| "For Loss of | Column A | Column B |
|---|---|---|
| "LIFE | $5,000 | $3,000" |

(Italics ours.)

Early in the morning of February 12th, Larson met his death as the result of an automobile accident at a point about forty miles east of Missoula, Montana. Plaintiff, the administrator of his estate, brought this action on the policy. The cause came to trial before a jury. The defendant admitted liability to the extent of three thousand dollars, and, after the evidence had been submitted, moved the court to direct a verdict in favor of plaintiff in that amount. Plaintiff countered with a motion for a directed verdict in the amount of five thousand dollars. The court

granted plaintiff's motion. From the judgment entered on such verdict, defendant appeals.

The sole question for determination is whether the insured, George H. Larson, met his death *"while riding as a passenger in or upon a public conveyance provided by a common carrier for passenger service . . ."* The automobile in which deceased was riding belonged to Corwin S. Barton. The car was under the control of Alfred E. Sherman, who was going east from Seattle to pick up and fetch back a trailer. Barton and Sherman were negotiating for an agency for the distribution of trailers, with headquarters at Bremerton.

Before leaving Seattle, about noon of February 11th, Sherman picked up the insured and four other persons, two of whom were bound for Spokane. Larson and the other two were going to points farther east. At Spokane, two other persons were picked up in lieu of those dropped. Barton knew none of these people, and Sherman never met any of them before February 11th. He got in touch with them through the activities of Bellows, who operated a travel bureau known as "Pike Street Auto Travel," with an office at 618 Pike street in Seattle.

Bellows neither owned nor operated automobiles for carrying passengers. His activities were confined to bringing together persons desiring transportation to the east or to California and owners of automobiles contemplating trips to such destinations. He rarely had anything to do with the arrangements between the owner of the automobile and the prospective passenger. There was no fixed rate of charge for such transportation. The amount to be charged by the car owner and paid by the passenger was wholly a matter for agreement between them. Occasionally, when they failed to agree, Bellows would suggest a compromise, which might or might not be accepted. The charge for transportation to Chicago, for instance, varied from "nothing to $35." For his services, Bellows collected from the passenger a fee ranging from nothing to four dollars. He received no part of the charge for transportation made by the car

owner. He sometimes required of the latter a deposit of one dollar. This was designed to insure the owner's return to pick up his passengers. It was returned to him if he requested it.

As a means of contacting prospective passengers, Bellows ran a daily advertisement in the Seattle Post-Intelligencer, in substance, as follows:

"Pike Street Auto Travel, 618 Pike, Main 2440 and Main 7577. '41 Chevrolet, Chicago, Detroit, Saturday. '41 Mercury, Chicago, Detroit, Monday. '41 Mercury, Chicago, Detroit, Tuesday. Cars daily to Frisco and Los Angeles. Free pickup."

A similar advertisement was sometimes run in other papers. And in a like manner, he occasionally contacted car owners intending to make trips to the east or to California. Some car owners made frequent trips east and to these Bellows gave preference in contacting prospective passengers.

Neither Barton nor Sherman had ever engaged in an enterprise of the kind before. Between them, they subsequently made several trips. The objective on each trip, however, was, as on this, to pick up a trailer in Michigan and fetch it back to Washington. During the period they were in the trailer business, they bought between fifteen and twenty trailers, all of which were towed from Michigan to Washington. Except in the three or four instances mentioned, however, they arranged with persons planning to drive east and back to pick up a trailer. For this service, they paid the owner an agreed fee. They had no voice or control over him or his car. Whether he took passengers east was of no concern to them. His obligation to them was to bring back a trailer for the agreed charge.

█ Now, in these operations, may either Bellows on the one hand or Barton and Sherman on the other be said to be engaged in the business of a common carrier? Whether one is engaged in such business is, of course, to be determined by what he does. *Terminal Taxiab Co. v. Kutz,* 241 U. S. 252, 60 L. Ed. 984, 36 S. Ct. 583, Ann. Cas. 1916D, 765.

One engaged in casual hauling is not a common carrier. *Big Bend Auto Freight v. Ogers,* 148 Wash. 521, 269 Pac. 802; Redfield on Carriers and other Bailees, § 19. At page 15, that author says:

"It is generally considered that where the carrier undertakes to carry only for the particular occasion, *pro hac vice,* as it is called, he cannot be held responsible as a common carrier. So, also, if the carrier be employed in carrying for one or a definite number of persons, by way of special undertaking, he is only a private carrier. To constitute one a common carrier he must make that a regular and constant business, *or at all events, he must, for the time, hold himself ready to carry for all persons, indifferently, who choose to employ him.*" (Italics ours.)

■■ The same statement somewhat elaborated may be found in *Cushing v. White,* 101 Wash. 172, 172 Pac. 229. Viewing the facts in the light of this definition, it would seem clear that Barton and Sherman were not common carriers. As for Bellows—he is further removed from the definition than they. He was not engaged in the carriage of passengers in any way. He operated no vehicles. He received no part of the fee or fare charged the passengers for transportation by the automobile owner. It is unnecessary to attempt a definition of his legal relationship to the passengers on the one hand or to the automobile owners on the other. That it is not that of a common carrier was effectually decided in *Strickler v. Schaaf,* 199 Wash. 372, 91 P. (2d) 1007.

In that case, we held that one engaged in exactly the same character of activities as Bellows was not a common carrier or, for that matter, any kind of carrier. The case came up on Strickler's application for an injunction to restrain Schaaf, as director of the department of public service, from interfering with her business. The department had threatened her with prosecution under Rem. Rev. Stat., § 6393 [P. C. § 234-9], charging that, without complying with the provisions of the motor vehicle act, she was engaged for compensation in transporting persons over the highways of the state by motor vehicle. Rem. Rev. Stat.,

§ 6388 [P. C. § 234-4]. The court held that neither she nor the automobile owners who furnished transportation to passengers provided by her were within the interdiction of the motor vehicle act. The decision compels the conclusion that neither Bellows nor Barton and Sherman were common carriers.

It follows that, by the express terms of the policy under consideration, the limit of appellant's liability is three thousand dollars.

Respondent makes much of the fact that Bellows, as agent of appellant, sold many of such policies—a thousand or more in the course of a few months. That is of course beside the question. This is not an action for fraud or misrepresentation in the sale of the policy to the deceased. It is an action *on* the policy. The fact that Bellows was appellant's agent in the sale of such policies does not make him a common carrier. Nor does it estop appellant, in an action on the policy, from asserting that he was not.

The cause is remanded, with direction to enter judgment in favor of the plaintiff for three thousand dollars.

SIMPSON, C. J., MILLARD, ROBINSON, and MALLERY, JJ., concur.