[No. 52334-7.   En Banc.   December 4, 1986.]

WEST VALLEY LAND COMPANY, INC., *Appellant,* v. NOB HILL WATER ASSOCIATION, *Respondent.*

*F. Joe Falk, Jr.* (of *Walters, Whitaker, Finney & Falk*), for appellant.

*Thomas A. Gish* and *Terry Brooks* (of *Brooks & Larson, P.S.*), for respondent.

CALLOW, J.—West Valley Land Company, Inc., is a real estate developer. It seeks recovery of all charges for water service for the past 2 years on the theory that Nob Hill Water Association, f/k/a Nob Hill Water Company, is a public water service company. West Valley also seeks a judgment declaring that Nob Hill is a water company subject to public regulation by the State Utilities and Transportation Commission (UTC) and attorney's fees together with treble damages under the Consumer Protection Act, RCW 19.86. The purpose of Nob Hill is to construct and operate a water supply system to provide water to its members for residential and domestic use and irrigation. West Valley appeals the denial of its motion for partial summary judgment and the grant of Nob Hill's motion for a summary judgment dismissing the complaints of West Valley with prejudice.

West Valley asserts that Nob Hill is a public service

company subject to regulation by the UTC. This presents two issues: (1) whether Nob Hill is a public service company as defined by RCW 80.04.010; and (2) whether Nob Hill is a public service company as defined in *Inland Empire Rural Electrification, Inc. v. Department of Pub. Serv.*, 199 Wash. 527, 92 P.2d 258 (1939). Other issues of secondary importance also have been raised. We affirm the trial court which held that Nob Hill is a nonprofit cooperative, not a public service corporation, and is not subject to regulation by the UTC.

Nob Hill was originally incorporated in 1908 under the name of Nob Hill Water Company. At that time Nob Hill had 50 members. It now has over 3,700 shareholder members. In the original articles of incorporation of Nob Hill (1908), article 4, section 2 stated indirectly that Nob Hill would operate as a nonprofit corporation and will

> [charge] . . . as may be necessary *to cover the cost and expense* of procuring such supply of water and of carrying and delivering the same to the stockholders.

(Italics ours.) Article 4, section 5 of the articles of incorporation read in part

> but no such funds raised from such charges and rentals shall ever be applied to the payment of dividends . . . it being intended to furnish, carry and deliver said water . . . *at actual cost.*

(Italics ours.)

Article 4, section 6 reads:

> The business of this corporation shall be conducted strictly upon the cooperative basis and no service shall be rendered to or for any person, firm or corporation other than stockholders of this corporation and there shall be no profit earned by the corporation nor any dividends declared from any accumulations in its treasury nor any division of the assets of the corporation among the stockholders thereof at any time unless upon the dissolution and liquidation of the corporation in which event each stockholder shall be entitled to take pro rata with every other stockholder of the corporation in any such liquidation.

The articles were amended numerous times, but the language in the relevant articles remained identical or retained the same meaning. In June of 1983 two articles of amendment were concurrently executed and filed. They first changed the name of the corporation to Nob Hill Water Association and declared that the corporation had no capital stock, either past or present. The second explicitly describes the corporation as a "non–profit association" for the first time.

West Valley decided to develop 14 acres of land which it owned within the Nob Hill service area. On August 15, 1983, the Yakima County Board of Commissioners approved a preliminary plat for West Valley's subdivision. On August 16, the Nob Hill Board of Directors adopted a resolution that the company charge a "membership fee" of $450 for all new service connections. In addition, Nob Hill was charging a service connection fee of $300 for a 1–inch meter and up to $1,900 for a 2–inch meter. Nob Hill did not seek approval from the UTC for these charges and policies. Nob Hill felt such approval was unnecessary partly because of past communications with the UTC in which the UTC informed Nob Hill that Nob Hill was not subject to UTC jurisdiction.

The UTC historically has not regulated nor asserted jurisdiction over and presently does not regulate nor assert jurisdiction over cooperatives or nonprofit water providers. Nob Hill has certain criteria to be met in order to qualify for service. Specific instances exist where Nob Hill has denied service to potential customers. Excess revenues, if any, are retained by Nob Hill to sustain company operations. West Valley now seeks a judgment that all charges paid by West Valley to Nob Hill during the 2 years prior to commencement of this action were overcharges.

We turn to the issue of whether Nob Hill is a public service company subject to regulation by the UTC. RCW 80.01 *et seq.* West Valley contends that Nob Hill is a water company under RCW 80.04.010 and therefore is a public service

company subject to UTC regulation. Nob Hill answers that it operates strictly as a nonprofit cooperative and is not a public service company.

The public service commission law, adopted in 1911, came into existence through an act entitled "An Act relating to public service properties and utilities, providing for the regulation of the same, fixing penalties for the violation thereof, making an appropriation and repealing certain acts." Laws of 1911, ch. 117, p. 538. The law has been amended numerous times.

The current section of the act, codified as RCW 80.04-.010, was amended three times during the 1985 regular session of the Legislature, each without reference to the others. Pursuant to the directive of RCW 1.12.025, we give effect to each act to the extent that the amendments do not conflict in purpose. We set forth the definitions reflected in the last act filed in the office of the Secretary of State as controlling (Laws of 1985, ch. 450). RCW 1.12.025. The definitions are set forth for purpose of discussion and such differences in definitions as exist in chapters 161, 167 and 450 of the Laws of 1985 are not material to our discussion of the issue presented in this case. RCW 80.04.010 (Laws of 1985, ch. 450, § 2) contains the following definitions:

> "Water system" includes all real estate, easements, fixtures, personal property, dams, dikes, head gates, weirs, canals, reservoirs, flumes or other structures or appliances operated, owned, used or to be used for or in connection with or to facilitate the supply, storage, distribution, sale, furnishing, diversion, carriage, apportionment or measurement of water for power, irrigation, reclamation, manufacturing, municipal, domestic or other beneficial uses for hire.
>
> "Water company" includes every corporation, company, association, joint stock association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, and every city or town owning, controlling, operating, or managing any water system for hire within this state: *Provided,* That it shall not include any water system serving less than sixty customers where

the average annual gross revenue per customer does not exceed one hundred twenty dollars per year.

. . .

"Public service company" includes every gas company, electrical company, telecommunications company, and water company. Ownership or operation of a cogeneration facility does not, by itself, make a company or person a public service company.

The term "service" is used in this title in its broadest and most inclusive sense.

■■ Under a literal application of the definitions set forth in RCW 80.04.010, Nob Hill would come within the scope of the regulatory provisions in RCW 80.04, because Nob Hill is a "water company" operating a "water system" in this state as an association that owns, controls, operates and manages a water system for power, irrigation, domestic and other beneficial uses. West Valley seeks to have Nob Hill subject to regulation pursuant to RCW 80.04 and RCW 80.28. Nob Hill contends that it is a nonprofit cooperative under the public service act.

[Such cases] must be determined by the character of the business actually carried on by the carrier and not by any secret intention or mental reservation it may entertain or assert when charged with the duties and obligations which the law imposes.

*Cushing v. White,* 101 Wash. 172, 181–82, 172 P. 229 (1918), *quoted in State ex rel. Addy v. Department of Pub. Works,* 158 Wash. 462, 465, 291 P. 346 (1930). "It does business . . . and the important thing is what it does, not what its charter says." *Terminal Taxicab Co. v. Kutz,* 241 U.S. 252, 253–54, 60 L. Ed. 984, 36 S. Ct. 583 (1916).

The fact that the articles of incorporation state that Nob Hill is a nonprofit cooperative does not end the inquiry. It must be ascertained what Nob Hill does.

Regulation by the department [UTC] is predicated upon the proposition that the service rendered is public service and, further, if the person sought to be regulated is a corporation, that it be a public service corporation . . .

*Inland Empire Rural Electrification, Inc. v. Department of*

*Pub. Serv.,* 199 Wash. 527, 536, 92 P.2d 258 (1939); *see also State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 P. 861 (1912); *State ex rel. Public Serv. Comm'n v. Spokane & I.E. R.R.,* 89 Wash. 599, 154 P. 1110 (1916); *Sunset Shingle Co. v. Northwest Elec. & Water Works,* 118 Wash. 416, 203 P. 978 (1922); *Clark v. Olson,* 177 Wash. 237, 31 P.2d 534, 93 A.L.R. 240 (1934); *State ex rel. Spokane United Rys. v. Department of Pub. Serv.,* 191 Wash. 595, 71 P.2d 661 (1937); *Port of Seattle v. Utilities & Transp. Comm'n,* 92 Wn.2d 789, 800, 597 P.2d 383 (1979); *Puget Sound Int'l Ry. & Power Co. v. Kuykendall,* 293 F. 791 (W.D. Wash. 1923); 51 C.J. *Public Utilities* § 79, at 38 (1930).

The test used to determine if a corporation is to be regulated by the UTC was stated in *Inland Empire,* at 537, as follows:

> A corporation becomes a public service corporation, subject to regulation by the department of public service, only when, and to the extent that, its business is dedicated or devoted to a public use. The test to be applied is whether or not the corporation holds itself out, expressly or impliedly, to supply its service or product for use either by the public as a class or by that portion of it that can be served by the utility; or whether, on the contrary, it merely offers to serve only particular individuals of its own selection.

*See also State ex rel. York v. Board of Cy. Comm'rs,* 28 Wn.2d 891, 184 P.2d 577, 172 A.L.R. 1001 (1947); *Miles v. Enumclaw Coop. Creamery Corp.,* 12 Wn.2d 377, 121 P.2d 945 (1942); *Motorola Communications & Elecs., Inc. v. State Pub. Serv. Comm'n,* 515 F. Supp. 793, 797 (S.D. Miss. 1979), *aff'd,* 648 F.2d 1350 (5th Cir. 1981). The actions and activities of the association indicate whether it must be regulated or allowed to conduct its business free of governmental control. *Inland Empire,* at 538, states:

> The question of the character of a corporation is one of fact to be determined by the evidence disclosed by the record. A corporation which is actually engaged as a public utility cannot escape regulation by the state merely

because its charter or its contract characterizes it as a private corporation. On the other hand, a private corporation cannot be converted into a public service corporation by mere legislative fiat. What it does is the important thing, not what it, or the state, says that it is. *See also McDonald v. Irby,* 74 Wn.2d 431, 435, 445 P.2d 192 (1968); *Trudeau v. Pacific States Box & Basket Co.,* 20 Wn.2d 561, 571, 148 P.2d 453 (1944); *Larson v. Aetna Life Ins. Co.,* 19 Wn.2d 601, 143 P.2d 850, 149 A.L.R. 1289 (1943); *Miles v. Enumclaw Coop. Creamery Corp., supra; Washington ex rel. Stimson Lumber Co. v. Kuykendall,* 275 U.S. 207, 72 L. Ed. 241, 48 S. Ct. 41 (1927).

We find from our application of the principles set forth to the actions of Nob Hill that it is not a public service corporation and, therefore, not subject to regulation by the UTC. Nob Hill conducts its business in accordance with the privileges granted and the limitations prescribed by law. But of greater consequence is that Nob Hill has not dedicated or devoted its facilities to public use, nor has it held itself out as serving, or ready to serve, the general public. As observed in *Inland Empire,* at 539–40:

> But more important than that is the controlling factor that it has not dedicated or devoted its facilities to public use, nor has it held itself out as serving, or ready to serve, the general public or any part of it. It does not conduct its operations for gain to itself, or for the profit of investing stockholders, in the sense in which those terms are commonly understood. It does not have the character of an independent corporation engaged in business for profit to itself at the expense of a consuming public which has no voice in the management of its affairs and no interest in the financial returns. Its members do not stand in the relation of members of the public needing the protection of the public service commission in the matter of rates and service supplied by an independent corporation.
>
> On the contrary, it functions entirely on a cooperative basis, typifying an arrangement under and through which the users of a particular service and the consumers of a particular product operate the facilities which they themselves own. The service, which is supplied only to

members, is at cost, since surplus receipts are returned ratably according to the amount of each member's consumption. There is complete identity of interest between the corporate agency supplying the service and the persons who are being served. It is a league of individuals associated together in corporate form for the sole purpose of producing and procuring for themselves a needed service at cost. In short, so far as the record before us indicates, it is not a public service corporation.

The Utah Supreme Court when faced with a similar problem adopted the reasoning of *Inland Empire* stating:

> *Inland Empire Rural Electrification, Inc. v. Dept. of Public Service of Washington,* 199 Wash. 527, 92 P. 2d 258, . . . held that a rural electric service cooperative was not a public utility under Washington's laws. We believe the reasoning in the Inland Empire case to be convincing and sound.
>
> We hold, therefore, that a non–profit electric cooperative which serves only its members, and is completely consumer owned with each consumer limited to one membership, is not a public utility within the purview of our statute.

*Garkane Power Co. v. Public Serv. Comm'n,* 98 Utah 466, 473, 100 P.2d 571 (1940).

Nob Hill will provide water service to any property within its service area upon request and without discrimination unless there is a technical reason that adequate service cannot be provided or the property owner fails to pay the necessary connection and membership fee. Although many in the Nob Hill area are serviced, the criteria for service is set forth by Nob Hill and there are instances where service has been denied. Nob Hill has chosen to serve particular individuals of its own selection, and does not serve the public as a class or that portion of it that could be served by Nob Hill.

Additionally, Nob Hill does not conduct its operations for gain to itself, or for the profit of investing stockholders, but functions entirely on a cooperative basis. Nob Hill has had greater annual revenues than expenses and West Valley asserts that since none of these excess revenues were

rebated to shareholder–members, but were retained to sustain company operations that this indicates that Nob Hill should be subject to regulation. However, the fact that excess revenues are not rebated to the shareholder–members is not controlling. A reasonable retention of profits for future liquidity and working capital is permissible. It is material, however, that Nob Hill does not have the character of an independent corporation engaged in business for profit to itself at the expense of a consuming public which has no voice in the management of its affairs and no interest in its financial returns. The members of Nob Hill do not stand in the same position as members of the general public needing the protection of the UTC in the matter of rates and service supplied by an independent corporation.

A comparison of *State ex rel. Addy v. Department of Pub. Works,* 158 Wash. 462, 465, 291 P. 346 (1930) with *Inland Empire Rural Electrification, Inc. v. Department of Pub. Serv.,* 199 Wash. 527, 92 P.2d 258 (1939) makes the distinction between those subject to regulation and those not subject to regulation apparent. In *Addy* the Fruitdale–on–the–Sound Water Company maintained and operated its system on charges collected from outside customers while supplying free water to those owning property inside the original 46–acre tract and, in addition, the stockholders declared and received a dividend on their stock out of funds derived from water charges against outside patrons. In *Inland Empire* the company did not hold itself out as serving the general public, nor did it conduct its business for gain or the profit of stockholders, and its members were held not to be in need of Public Service Commission regulation. Nob Hill conducts its business as did Inland Empire, not as did the Fruitdale–on–the–Sound Water Company.

In a cooperative, the consumers have a "voice" in the management of its affairs. West Valley contends that not all users are allowed to vote at the shareholder–member meeting. On the other hand, although some persons using Nob Hill water cannot vote directly, they can vote derivatively through their landlord or their condominium associa-

tion. Tenants receive the same benefit as other members and are not charged an additional amount for their water nor are they treated differently as a class. Since the landlord or the condominium association has membership and a vote in the water association, the tenant or condominium association member cannot be exploited since the interest of the landlord and the condominium association is the same as the interest of those represented. Equality of representation is not required by *Inland Empire*; all that is requisite is a voice in the cooperative. Since all members are directly or derivatively represented, the requirement is met.

█ In 1963 a proviso was added to the current definition of "water company" as contained in RCW 80.04.010. This proviso has been since amended. The proviso currently states

> *Provided,* That it shall not include any water system serving less than sixty customers where the average annual gross revenue per customer does not exceed one hundred twenty dollars per year.

This proviso exempts small companies from UTC jurisdiction. However, the provision does not allow only small companies with less than 60 customers and annual gross revenue per customer of $120 or less to be excluded from UTC jurisdiction.

> [A] proviso . . . must be construed in the light of the body of the statute, and in such a manner as to carry out the legislature's intent as manifested by the entire act and laws in pari materia therewith. Provisos operate as limitations upon or exceptions to the general terms of the statute to which they are appended and as such, generally, should be strictly construed with any doubt to be resolved in favor of the general provisions, rather than the exceptions.

*Garvey v. St. Elizabeth Hosp.,* 103 Wn.2d 756, 759, 697 P.2d 248 (1985) (quoting *State v. Wright,* 84 Wn.2d 645, 652, 529 P.2d 453 (1974)).

Regulation by the commission is predicated upon the proposition that the service rendered is a public service and

that the entity sought to be regulated is a public service corporation. Nob Hill is not a public service corporation but rather a nonprofit cooperative and its failure, by virtue of its size, to fall within the exemption from regulation proviso does not make it subject to regulation.

Nob Hill is a nonprofit cooperative. It is not within the ambit of regulation of the UTC as a public service corporation. In light of our disposition of the primary issues present on appeal, we need not address the ancillary questions raised.

The trial court is affirmed.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.