Honorable Bob Morton State Senator, 7th District P. O. Box 40407 Olympia, WA 98504-0407
Honorable Janéa Holmquist State Representative, 13th District P. O. Box 40600 Olympia, WA 98504-0600
Dear Senator Morton and Representative Holmquist:
By letter previously acknowledged, you have asked for an opinion interpreting RCW 90.44.050. Under this statute, certain withdrawals of groundwater may be made without applying for and receiving a water right permit. You have posed the following questions:
1. Does RCW 90.44.050 restrict groundwater withdrawals without a permit,for stock-watering purposes, to 5,000 gallons per day?
2. If RCW 90.44.050 does not limit such groundwater withdrawals forstock-watering to 5,000 gallons per day, may the Department of Ecologyimplement rules imposing such a limit?
3. May an agency interpret and apply statutory language differently overtime due to its perception of changing societal needs or the agency'sevolving public policy perspective?
 BRIEF ANSWERS
RCW 90.44.050 authorizes groundwater withdrawals for stock-watering purposes without a water right permit and does not limit the amount of such withdrawals to any specific quantity. The Department of Ecology (Ecology) lacks statutory authority to require a permit as a condition to the withdrawal of groundwater for stock-watering purposes, or to categorically limit the amount of water that may be withdrawn for such purposes. In certain circumstances, statutes administered by Ecology would authorize it to affect or limit withdrawals of water for stock-watering purposes, just as they would authorize Ecology to affect or limit other exempt and nonexempt withdrawals. An administrative agency may not interpret a statute in a manner that is inconsistent with its language and legislative intent based on its belief that a different interpretation would better advance sound public policy, but may change its interpretation based on changes in case law, new information about legislative intent in enacting the statute, or where the statute is sufficiently broad to reasonably permit a changed interpretation.
 ANALYSIS
Background
Your questions concern a portion of the state's groundwater code, originally enacted in 1945 and codified as RCW 90.44. The key section giving rise to your questions is RCW 90.44.050, which provides as follows:
After June 6, 1945, no withdrawal of public ground waters of the state shall be begun, nor shall any well or other works for such withdrawal be constructed, unless an application to appropriate such waters has been made to the department and a permit has been granted by it as herein provided: EXCEPT, HOWEVER, That any withdrawal of public ground waters forstock-watering purposes, or for the watering of a lawn or of a noncommercial garden not exceeding one-half acre in area, or for single or group domestic uses in an amount not exceeding five thousand gallons a day, or as provided in RCW 90.44.052, or for an industrial purpose in an amount not exceeding five thousand gallons a day, is and shall be exemptfrom the provisions of this section, but, to the extent that it isregularly used beneficially, shall be entitled to a right equal to thatestablished by a permit issued under the provisions of this chapter: PROVIDED, HOWEVER, That the department from time to time may require the person or agency making any such small withdrawal to furnish information as to the means for and the quantity of that withdrawal: PROVIDED, FURTHER, That at the option of the party making withdrawals of ground waters of the state not exceeding five thousand gallons per day, applications under this section or declarations under RCW 90.44.090 may be filed and permits and certificates obtained in the same manner and under the same requirements as is in this chapter provided in the case of withdrawals in excess of five thousand gallons a day.
RCW 90.44.050 (italics added). Structurally, this section states: (1) a general rule requiring a water right permit for any withdrawal of public groundwater; (2) a proviso excepting identified categories of withdrawals from the general rule — i.e., allowing them without a permit; (3) a second proviso allowing Ecology to require persons making withdrawals excepted from the permit requirement to provide information about the means and amounts of such withdrawals; and (4) a third proviso giving persons, authorized by the statute to withdraw less than 5,000 gallons a day without a permit, the option to obtain a water right through the generally applicable permit process.[1] Under the statute, an authorized use of groundwater without a permit establishes a water right to the same extent as a right established by permit.
With this statutory background, we turn to your questions:
1. Does RCW 90.44.050 restrict groundwater withdrawals without a permit,for stock-watering purposes, to 5,000 gallons per day?
Your question is one of statutory construction and, as such, is governedby rules that courts apply in construing statutes. The fundamental objectof statutory construction is to ascertain and carry out the Legislature'sintent. Dep't of Ecology v. Campbell Gwinn, L.L.C., 146 Wn.2d 1, 9,43 P.3d 4 (2002). Under applicable rules, if a statute's meaning is plain from the face of the statute, then effect must be given to its "plain meaning" as expressing the Legislature's intent. Id. at 9-10. To determine whether the meaning of a statute is plain, one must consider the statutory scheme as a whole, including related statutes. Plain meaning is "derived from what the Legislature has said in its enactments, but that meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Id. at 10-11. If, after considering "all that the Legislature has said", the statute is not plain (but rather is ambiguous), then the court applies additional rules of statutory construction to resolve the ambiguity and determine what the statutory language means. Notably, however, a statute is not ambiguous merely because it is subject to more than one conceivable interpretation. Rather, ambiguity depends on the existence of more than one reasonable meaning. State v. Keller, 143 Wn.2d 267, 276, 19 P.3d 1030
(2001).
We conclude that the first proviso to RCW 90.44.050 makes it plain that groundwater withdrawals for stock-watering are exempt from the permit requirement, and that the exemption is not limited to withdrawals of less than 5,000 gallons a day. The relevant language exempts:
any withdrawal of public ground waters for stock-watering purposes, or for the watering of a lawn or of a noncommercial garden not exceeding one-half acre in area, or for single or group domestic uses in an amount not exceeding five thousand gallons a day, or as provided in RCW 90.44.052, or for an industrial purpose in an amount not exceeding five thousand gallons a day[.]
RCW 90.44.050 (italics added). Based on its ordinary language and rules of grammar, the first proviso exempts:
• any withdrawal for stock-watering purposes,
• [any withdrawal] for the watering of a lawn or of a noncommercial garden not exceeding one-half acre in area,
• [any withdrawal] for single or domestic group uses in an amount not exceeding 5,000 gallons a day [or as provided in RCW 90.44.052], or
• [any withdrawal] for an industrial purpose in an amount not exceeding 5,000 gallons a day.
Of these four categories of withdrawals, the third (single or group domestic use) and the fourth (industrial use) are expressly limited to withdrawals of less than 5,000 gallons a day. The second category (watering a lawn or a noncommercial garden) is not limited to 5,000 gallons a day but contains an acreage limit. By contrast, the first category (stock-watering purposes) contains no language limiting the amount of the withdrawal. Thus, the grammatical structure and plain language of this proviso indicates that of these four categories, groundwater withdrawals for stock-watering purposes are not limited. Indeed, the language of the exceptions makes it evident that the Legislature was well aware of how to limit exempt withdrawals when it so chose, and it did not do so with respect to stock-watering.[2]
If RCW 90.44.050 ended with its first proviso, this would be the end of the inquiry. However, the inquiry does not end with consideration of only the first part of RCW 90.44.050. In determining the meaning of statutory language, the courts interpret a statute as a whole "in the context of the entire act" in which it appears. Campbell Gwinn, 146 Wn.2d at 10
(quoting Estate of Lyons v. Sorenson, 83 Wn.2d 105, 108, 515 P.2d 1293
(1973)). "[P]lain meaning is still derived from what the Legislature has said in its enactments, but that meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Id. at 11.
Accordingly, it is necessary to consider the rest of the statute and related statutes to determine whether they limit the stock-watering exemption to 5,000 gallons a day, or create an ambiguity with respect to the amount of water that may be withdrawn without a permit for stock-watering purposes. As noted above, the second proviso states that Ecology may require information from any person making "any such small withdrawal" as to the means or amount of the withdrawal. The third proviso gives persons making withdrawals "not exceeding 5,000 gallons a day" without a permit the option of applying for and obtaining one. The question then becomes whether either of these provisos limits the amount of groundwater that may be withdrawn without a permit for stock-watering purposes. Finally, in a related statute, RCW 90.14.051, the Legislaturedescribed exempt uses as "minimal uses".
 We do not read either the second or the third proviso as altering themeaning of the first proviso as discussed above. We note first the natureof provisos generally. Provisos operate as limitations on or exceptionsto the terms of the statute to which they are appended and, as such,generally should be strictly construed with any doubt resolved in favorof the general provisions, rather than the proviso. West Valley LandCo., Inc. v. Nob Hill Water Ass'n, 107 Wn.2d 359, 369, 729 P.2d 42(1986). When interpreting a statute which contains an exception to thestatute's general rule, especially when the general rule is unambiguous,the exception should be strictly construed with any doubts resolved infavor of the general provision, rather than the exception. Converse v.Lottery Comm'n, 56 Wn. App. 431, 783 P.2d 1116 (1989). Here, the secondand third provisos do not modify the general rule (requiring a permit forgroundwater withdrawals) but rather modify the categorical exemptions inthe first proviso.[3]
Neither the second nor third proviso contains language limiting the amount of water that may be withdrawn without a permit for stock-watering purposes. The second proviso plainly is intended to modify the categorical exemptions by allowing Ecology to track the amount and method of withdrawals exempt from the permit requirement. We understand the phrase "any such small withdrawal" or "minimal uses" as the Legislature's short-hand reference to withdrawals falling within any of the four categorical exemptions listed in the first proviso.[4] The second proviso authorizes Ecology to obtain information concerning any of these "small" withdrawals, but contains no language further limiting such withdrawals.
Similarly, the third proviso plainly is intended to modify the statutory exemptions from the permitting process to give a person the option to obtain a permit for certain categories of withdrawals that would otherwise be exempt from the permit requirement. The reference to "5,000 gallons a day" defines the category of water user that is authorized by the third proviso to apply for an (optional) permit. Again, we do not believe that this language can be read to impose a quantitative limitation on exempt stock-water withdrawals. The obvious purpose of the third proviso is to permit certain otherwise exempt water users to apply for a permit if they so choose, not to re-define the categorical exemptions in the first proviso. Thus, we conclude that neither the second nor third provisos imposes a quantitative limit on the amount of groundwater that may be withdrawn without a permit for stock-watering purposes.
It has been suggested that the second and third provisos nonetheless create an ambiguity with respect to the scope of the stock-watering exception, an ambiguity that should be resolved by construing the statute to impose a 5,000-gallon-a-day limit on withdrawals for stock-watering purposes. Under this view, the descriptive phrase "small withdrawal" in the second proviso suggests that all withdrawals exempt from permitting by the first proviso must be "small"; the reference to 5,000 gallons a day in the third proviso quantifies the term "small withdrawal" at 5,000 gallons a day; and taken together, these provisos suggest that all of the exceptions to the permit requirement under RCW 90.44.050 are limited to 5,000 gallons a day. This approach depends on reading language into the second and third provisos that they do not contain, and reading language out of the first proviso that it does contain, i.e., "any withdrawal" for stock-watering purposes. All language in a statute is to be given meaning; a court may not add language to a statute that it does not contain. State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). As previously noted, a statute is not ambiguous merely because it is subject to more than one conceivable interpretation. Rather, ambiguity depends on the existence of more than one reasonable meaning. Keller,143 Wn.2d at 276. In addition, this approach discounts that the 1945 Legislature very well could have considered withdrawal of water for stock-watering purposes as small in relation to many other types of groundwater withdrawal, or small in relation to all groundwater withdrawal as a whole. As noted earlier, it would seem unlikely that having been precise in limiting the amount of other categories of withdrawals exempt from permitting, the Legislature would have intended to change this language through oblique references in the later provisos. See De Grief v. City of Seattle, 50 Wn.2d 1, 11, 297 P.2d 940
(1956) (when similar words are used in different parts of a statute, the meaning is presumed to be the same throughout). The conclusion we reach gives full meaning to each phrase contained in RCW 90.44.050, while still giving a sensible construction to the section taken as a whole.
Finally, it could be suggested that an "open-ended" exemption for stock-watering is inherently inconsistent with the general policy of requiring permits for groundwater withdrawals in order to provide for an orderly and consistent administration of an important and limited public resource, the state's water supply. The answer to this, first, is that broad policies must still be considered in light of the specific language the Legislature used in enacting the groundwater code. Here, the Legislature appears to have chosen its words carefully in defining which withdrawals should be exempt from permitting. As noted earlier, the Legislature may have concluded that the total amount of water used for this purpose was sufficiently small to justify the categorical exemption.
Second, the Legislature gave Ecology an important tool in the second proviso to RCW 90.44.050: Ecology may require information on the use of groundwater for stock-watering (and other exempt withdrawals) and can use the information for its administrative and enforcement decisions. This information would assist in assuring that exempt withdrawals do not impair more senior water rights, as well as providing a clearer picture concerning the uses of water in a given area. If the information shows that exempt withdrawals are jeopardizing the quantity or quality of water available, these facts can be drawn to the attention of the Legislature, which is the proper body to consider changes in the state's water resource policies.
2. If RCW 90.44.050 does not limit such groundwater withdrawals forstock-watering to 5,000 gallons per day, may the Department of Ecologyimplement rules imposing such a limit?
Administrative rules may not contradict legislative enactments. Edelmanv. State ex rel. Pub. Disclosure Comm'n, 152 Wn.2d 584, 99 P.3d 386
(2004), Dep't of Ecology v. Theodoratus, 135 Wn.2d 582, 600, 957 P.2d 1241
(1998). Accord AGO 1989 No. 7. As noted above, RCW 90.44.050 authorizes groundwater withdrawals for stock-watering purposes without requiring a permit, and without any numeric limitation on the maximum quantity of water withdrawn. The statute does not authorize Ecology to modify the categorical exemptions, nor could we locate any other statute that would authorize Ecology to promulgate an administrative rule categorically limiting the amount of unpermitted groundwater withdrawals. It follows, then, that such a rule would be inconsistent with RCW 90.44.050 and, accordingly, Ecology would lack authority to adopt it.[5]
Although Ecology lacks authority to categorically limit the amount of water that may be withdrawn for stock-watering purposes without a permit, other statutes that authorize Ecology to regulate the use of water may affect withdrawals for stock-watering, just as they may affect other exempt withdrawals and withdrawals requiring a permit. For example, inPostema v. Pollution Control Hearings Bd., 142 Wn.2d 68, 94-95, 11 P.3d 726
(2000), the Supreme Court held that where Ecology has closed water bodies and ground water in hydraulic continuity with such bodies to new withdrawals, it may prohibit new withdrawals that "will have any effect on the flow or level of the surface water." Such a new withdrawal might be a new withdrawal for stock-watering or it might be a new withdrawal for some other purpose. As a second example, consistent with principles of prior appropriation, Ecology has authority under RCW 90.44.130 "to limit withdrawals by appropriators of ground water so as to enforce the maintenance of a safe sustaining yield from the ground water body." Seealso RCW 18.104.040(4)(g), authorizing Ecology to limit well construction in areas "requiring intensive control of withdrawals in the interests of sound management of the ground water resource." Depending on the specific facts and circumstances, then, these statutes could affect withdrawals for stock-watering purposes, just as they could affect withdrawals for other purposes.
3. May an agency interpret and apply statutory language differently overtime due to its perception of changing societal needs or the agency'sevolving public policy perspective?
Your opinion request reflects your belief that, over time, Ecology has changed its interpretation of RCW 90.44.050. You suggest that Ecology originally read RCW 90.44.050 to exempt all withdrawals of groundwater for stock-watering purposes from permitting, and only recently began interpreting the statute to limit the stock-watering exemption to 5,000 gallons a day. We understand that Ecology disputes this view, and asserts that it has consistently interpreted the statute for many years, and perhaps since 1945. A legal opinion is not well-suited to resolving factual disputes, and it is not necessary to determine whether such a change occurred in order to answer your question. Consequently, the assertion is not addressed, and this opinion responds to your question as if it were hypothetical in nature.
Like a court, an administrative agency is to interpret and apply statutes to carry out the Legislature's intent, consistent, of course, with binding case law interpreting the statute. On occasion, this responsibility may require an administrative agency to change its interpretation or application of the law. For example, a controlling court decision may conclude that the agency's interpretation is erroneous. New circumstances may arise which make it apparent that the agency's prior interpretation did not comport with legislative intent; or an agency's reassessment of its prior approach may lead it to conclude that its interpretation is inconsistent with the language of the statute and should be modified. In other cases, governing statutes may be sufficiently broad that a changed interpretation would be consistent with statutory language and legislative intent. Where that is the case, an administrative agency would have the discretion to choose the interpretation that it believes best implements the law. Provided that its interpretation is constitutionally permissible and is reasonably consistent with the statute being implemented, the agency would not be precluded from changing its interpretation based on its determination that a different approach would better serve legislative intent. In re Myers,105 Wn.2d 257, 264, 714 P.2d 303 (1986) (administrative rules are presumed valid and will be upheld if reasonably consistent with the statute they implement); Lockheed Shipbldg. Co. v. Dep't of Labor Indust., 56 Wn. App. 421, 430, 783 P.2d 1119 (1989) (administrativeagency not disqualified from changing its interpretation of statute).
However, none of these circumstances suggest that, based simply on its own policy preferences and without regard to statutory language and legislative intent, an agency is authorized to decide how to interpret a statute, or to change its interpretation. An agency may not alter its interpretation of a statute in a manner that is inconsistent with governing statutes simply because its own policy preferences have changed. See Kim v. Pollution Control Hearing Bd., 115 Wn. App. 157,163, 61 P.3d 1211 (2003) (administrative agency may not alter the plain meaning of a statute to meet changing societal conditions).
We trust the foregoing will prove useful to you.
Very truly yours,
ROB MCKENNA, Attorney General
JAMES K. PHARRIS, Deputy Solicitor General
:aj
[1] Almost all of the language in RCW 90.44.050 dates from the adoption of the original groundwater code. Laws of 1945, ch. 263, § 5. The two parts of the statute that are newer than 1945 are: (1) the third proviso, authorizing the option of securing a permit for certain water uses that otherwise would be exempt, added by Laws of 1947, ch. 122, § 1; and (2) the phrase "or as provided in RCW 90.44.052", in the first proviso. This phrase was added in 2003 when RCW 90.44.052 was enacted to allow a pilot program involving cluster housing in Whitman County relating to the statute's exemption for single or group domestic uses. Laws of 2003, ch. 307, § 2.
[2] Although it was not considering the scope of the stock-watering exemption, the Court of Appeals, in Kim v. Pollution Control HearingBd., 115 Wn. App. 157, 160, 61 P.3d 1211 (2003), similarly described RCW 90.44.050:
The overall scheme of this statute is to require a permit except for certain "small withdrawals." The 1945 legislature defined a "small withdrawal" as (1) any amount of water for livestock; (2) any amount of water for a lawn or for a noncommercial garden of a half acre or less; (3) not more than five thousand gallons per day for domestic use; and (4) not more than five thousand gallons per day "for an industrial purpose."
[3] The second and third provisos do not modify, restrict, or create an exception to that part of the statute stating the general rule that a permit is required prior to withdrawing groundwater. Neither proviso would make any sense in that context. For example, if the second proviso modified only the general rule of the statute requiring a permit for groundwater withdrawal, the statute would read as follows:
After June 6, 1945, no withdrawal of public ground waters of the state shall be begun, nor shall any well or other works for such withdrawal be constructed, unless an application to appropriate such waters has been made to the department and a permit has been granted by it as herein provided . . . . PROVIDED, HOWEVER, That the department from time to time may require the person or agency making any such small withdrawal to furnish information as to the means for and the quantity of that withdrawal[.]
Similarly, if the third proviso modified that general requirement, it would read:
After June 6, 1945, no withdrawal of public ground waters of the state shall be begun, nor shall any well or other works for such withdrawal be constructed, unless an application to appropriate such waters has been made to the department and a permit has been granted by it as herein provided . . . . PROVIDED, FURTHER, That at the option of the party making withdrawals of ground waters of the state not exceeding five thousand gallons per day, applications under this section or declarations under RCW 90.44.090 may be filed and permits and certificates obtained in the same manner and under the same requirements as is in this chapter provided in the case of withdrawals in excess of five thousand gallons a day.
The provisos only make sense as modifications of all of the language that precedes them, including the categorical exceptions to the general requirement for a permit.
[4] The Legislature may have thought of stock-watering withdrawals as "small" in the sense that, at the time the exemption was enacted in 1945, most farms withdrew relatively small amounts of water for this purpose. This does not mean that the reference to "small" was intended to quantify the maximum quantity of water which could be withdrawn for stock-watering without a permit. If the Legislature had intended this result, surely it would have adopted far more direct and specific wording.
[5] In answering this question, we do not intend to imply that Ecology has adopted rules limiting unpermitted groundwater withdrawals, or is considering the adoption of such rules.